**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABRUZZO DOCG INC. d/b/a TARALLUCCI E VINO, et al., | Case No. 1:20-cv-04160 |
| *Plaintiffs,* | Judge Margo K. Brodie |
| *vs.* | Magistrate Judge James Orenstein |
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, et al., | |
| *Defendants.* | Removed from New York Supreme Court, Kings County Case No. 514089/2020 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'</u>**
**<u>MOTION TO REMAND</u>**

Jeremy M. Creelan
Michael W. Ross
Seth H. Agata
Jenna E. Ross
Jacob D. Alderdice
JENNER & BLOCK LLP
919 Third Ave., 38th Floor
New York, NY 10022
Telephone:  212-891-1678
Email: jcreelan@jenner.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY .................................................. 3

LEGAL STANDARD ................................................................................................ 5

ARGUMENT .............................................................................................................. 6

I.  This Court Lacks Jurisdiction Because There Is Not Complete Diversity and Several Defendants Reside in New York ............................................................. 6

II.  Defendants' Attempts to Circumvent the Complete Diversity Requirement and Removal Statute Fail .............................................................................................. 8

    A.  Fraudulent Misjoinder Is a Widely Rejected Doctrine and Is Inapplicable To This Case. ............................................................................................ 8

        1.  The Court should reject entirely the fraudulent misjoinder doctrine because it is an improper expansion of federal court jurisdiction. ............. 8

        2.  The fraudulent misjoinder doctrine is inapplicable to the facts of this case. ............................................................................................ 12

    B.  The Court Cannot Grant Severance Under Rule 21 Because the Court Does Not Have Jurisdiction, Nor Would Severance Be Warranted. ................... 18

        1.  Rule 21 cannot be used to create jurisdiction where none exists ............. 18

        2.  Rule 21 severance would be improper on these facts. ............................. 20

    C.  Fraudulent Joinder Is Inapplicable .................................................................. 21

CONCLUSION ........................................................................................................... 23

i

## TABLE OF AUTHORITIES

PAGE(S)

CASES

*A. Kraus & Son v. Benjamin Moore & Co.*,
   2006 WL 1582193 (E.D.N.Y. June 7, 2006) ................................................................9, 10, 23

*In re Ace Sec. Corp. RMBS Litig.*,
   2015 WL 1408837 (S.D.N.Y. Mar. 26, 2015) ........................................................................5

*Alegre v. Aguayo*,
   2007 WL 141891 (N.D. Ill. January 17, 2007) ......................................................................9

*Aviyon Med. Rehab., P.C. v. Allstate Ins. Co.*,
   791 N.Y.S.2d 867 (Sup. Ct. Kings. Cnty. 2004) ..................................................................13

*In re Benjamin Moore & Co.*,
   309 F.3d 296 (5th Cir. 2002) ..................................................................................................9

*Bird v. Carteret Mortg. Corp.*,
   2007 WL 894841 (S.D. Ohio Mar. 22, 2007) .........................................................................9

*Brardo v. Am. Hope Group Inc.*,
   2014 WL 10342434 (N.Y. Sup. Ct. Queens Cnty. Sep. 24, 2014) ........................................14

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004) ..................................................................................................23

*Chao v. Russell P. Le Frois Builder, Inc.*,
   291 F.3d 219 (2d Cir. 2002) ..................................................................................................20

*Chattanooga Prof'l Baseball, LLC v. Phila. Indem. Ins. Co.*,
   No. 20-cv-03032 (E.D. Pa. June 25, 2020) ...........................................................................20

*Creighton v. Bristol-Myers Squibb & Co.*,
   2013 WL 12333214 (N.D. Ill. May 10, 2013) .........................................................................9

*Cole v. City of New York*,
   2020 WL 3618422 (S.D.N.Y. July 2, 2020) ............................................................................7

*Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*,
   288 F.R.D. 331 (S.D.N.Y. 2013) ...........................................................................................20

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
   422 F. Supp. 2d 357 (S.D.N.Y. 2006) ..............................................................................10, 12

*In re Fosamax Prod. Liab. Litig.*,
    2008 WL 2940560 (S.D.N.Y. July 29, 2008) ....................................................12

*Geffen v. Gen. Elec. Co.*,
    575 F. Supp. 2d 865 (N.D. Ohio 2008)...........................................................11

*Gerbo v. Kmart Corp.*,
    2015 WL 6691603 (E.D.N.Y. Nov. 3, 2015).....................................................6

*Hampton v. Insys Therapeutics, Inc.*,
    319 F. Supp. 3d 1204 (D. Nev. 2018).................................................9, 10, 11, 19

*Hempstead Gen. Hosp. v. Liberty Mut. Ins. Co.*,
    521 N.Y.S.2d 469 (2d Dep't 1987) ..................................................................14

*Home Depot U. S. A., Inc. v. Jackson*,
    139 S. Ct. 1743 (2019)..............................................................................5, 10

*ICON MW, LLC v. Hofmeister*,
    950 F. Supp. 2d 544 (S.D.N.Y. 2013)...............................................................17

*In Suk Chai v. Big Boy Coach, Inc.*,
    2013 WL 5676484 (E.D.N.Y. Oct. 17, 2013)......................................................7

*Kahlon v. Yitzhak*,
    270 F. Supp. 3d 583 (E.D.N.Y. 2017) ...............................................................3

*Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*,
    2015 WL 4508739 (S.D.N.Y. July 24, 2015) ............................................. *passim*

*Leone v. Bd. of Assessors*,
    953 N.Y.S.2d 157 (2d Dep't 2012)..............................................................13, 15

*Lincoln Prop. Co. v. Roche*,
    546 U.S. 81 (2005)........................................................................................6, 7

*Lora v. S.J. Costa & Son Trucking, Inc.*,
    2016 WL 4661043 (E.D.N.Y. Sept. 7, 2016) .................................................5, 22

*Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*,
    790 F. Supp. 2d 590 (E.D. Ky. 2011) ...............................................................12

*Nolan v. Olean Gen. Hosp.*,
    2013 WL 3475475 (W.D.N.Y. July 10, 2013).................................................19, 21

*In re Paulsboro Derailment Cases*,
    2014 WL 197818 (D.N.J. Jan. 13, 2014) .......................................................11, 16

*In re Prempro Prod. Liab. Litig.*,
   591 F.3d 613 (8th Cir. 2010) ...........................................................................12

*In re Propecia (Finasteride) Prod. Liab. Litig.*,
   2013 WL 3729570 (E.D.N.Y. May 17, 2013) ..............................................16, 17

*Proulx v. Mintzer*,
   2020 WL 3105034 (D. Mass. June 11, 2020) ..................................................9

*Purdue Pharma L.P. v. Kentucky*,
   704 F.3d 208 (2d Cir. 2013)............................................................................6

*Pa. Pub. Sch. Emps.' Ret. Sys. v.Morgan Stanley & Co.*,
   772 F.3d 111 (2d Cir. 2014)............................................................................6

*Rose v. Horan*,
   2018 WL 4344954 (E.D.N.Y. Sept. 11, 2018) ...........................................21, 22

*Rost v. Pfizer Inc.*,
   502 F. App'x 51 (2d Cir. 2012) .....................................................................21

*Rutherford v. Merck & Co.*,
   428 F. Supp. 2d 842 (S.D. Ill. 2006) ............................................................10

*Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*,
   2014 WL 7004033 (S.D.N.Y. Dec. 11, 2014) ............................................ *passim*

*Standard Fire Ins. Co. v. Knowles*,
   568 U.S. 588 (2013)......................................................................................11

*Staubus v. Purdue Pharma, L.P.*,
   2017 WL 4767688 (E.D. Tenn. Oct. 20, 2017) ...........................................9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998)........................................................................................19

*Tapscott v. MS Dealer Serv. Corp.*,
   77 F.3d 1353 (11th Cir. 1996) ...............................................................9, 10, 12

*Ultimate Hearing Sols. II, LLC v. Hartford Underwriters Ins. Co.*,
   No. 20-cv-02401 (E.D. Pa. July 8, 2020)......................................................20

*Wangers v. AIG Prop. Cas. Co.*,
   2020 WL 3790836 (C.D. Cal. July 7, 2020) .................................................9

## STATUTES

28 U.S.C. § 1332(a)(1).........................................................................................5

28 U.S.C. § 1441 ............................................................................................................5, 7

28 U.S.C. § 1446 ...............................................................................................................7

28 U.S.C. § 1447(c) ..........................................................................................................3

**RULES**

Fed. R. Civ. P. 20 .......................................................................................................13, 15

Fed. R. Civ. P. 21 ..................................................................................................... *passim*

Fed. R. Civ. P. 81.1 ..............................................................................................7, 17, 18

Fed. R. Civ. P. 82 .............................................................................................................19

N.Y. C.P.L.R. 1002 ....................................................................................................13, 14, 15

**OTHER AUTHORITIES**

*Overview of Panel,* Judicial Panel on Multidistrict Litigation,
     https://www.jpml.uscourts.gov/overview-panel-0 (last visited Sep. 24, 2020) .......................22

## INTRODUCTION

It is a basic foundation of federal law that federal courts have limited jurisdiction and cannot be asked to manufacture such jurisdiction where it does not exist.   By removing this action from state court where it was properly filed, Defendants ask this Court to violate this foundational rule by relying upon heavily disfavored or squarely inapplicable doctrines.

Plaintiffs, owners and operators of restaurants and bars located primarily in New York City, came to New York Supreme Court in Kings County with a common legal question based on common facts and industry-standard policy language: whether Defendant Insurers must provide coverage under all-risk commercial property insurance policies ("Policies" or "Policy") for direct physical loss and/or damage caused by executive orders that have physically impaired, detrimentally altered, and rendered nonfunctional Plaintiffs' properties.

Each and every Plaintiff bought and paid for business interruption coverage in a Policy that contained the same relevant terms.  Each and every Plaintiff submitted a claim for loss and damage suffered beginning in mid-March 2020, when the executive orders went into effect.  And each Defendant Insurer denied coverage on the same ground, contending that Plaintiffs did not satisfy the physical loss or damage requirement.  As masters of their own complaint—and based on the belief that this common question of New York insurance law would be decided most efficiently, uniformly, and quickly by the New York Supreme Court—Plaintiffs elected to file a single complaint in that court to challenge those denials and answer that common question.

There is no dispute that each Defendant is subject to personal jurisdiction in New York— several Defendants are incorporated, or have their principal place of business in New York, and the remaining Defendants either contracted to supply insurance products and services in New York or consented to jurisdiction in this state.  Nor is there any dispute that, as pleaded, this case includes claims by New York Plaintiffs against New York Defendants, among other shared states of

citizenship, and that the New York Defendants were sued in their home state.  Under these circumstances, this Court lacks subject matter jurisdiction and removal is improper.

Nevertheless, certain Defendants (collectively, "Removing Defendants") have removed this case to federal court or consented to such removal.  They offer three arguments but each improperly asks this Court to *manufacture* diversity jurisdiction over a case it lacks jurisdiction over in the first place.  There is no valid basis for the Court to take this step here, and numerous courts have correctly rejected similar invitations in the past.

First, Removing Defendants contend that fraudulent or egregious misjoinder applies.  This argument asks this Court to manufacture complete diversity—where it does not currently exist— by severing non-diverse parties and retaining jurisdiction over a portion of the case in the forum where Removing Defendants would prefer to litigate.  But courts across the country have rejected the disfavored doctrine of fraudulent misjoinder because it violates fundamental principles of limited federal jurisdiction, deprives Plaintiffs of ownership of their own complaint, and results in an impractical and inefficient multiplication of similar actions.  Even if the doctrine were to apply, Defendants cannot show that Plaintiffs "egregiously" misjoined their claims; to the contrary, Plaintiffs' joinder was entirely proper under New York law.

Second, Removing Defendants ask this Court to sever diverse Plaintiffs' claims under Rule 21 and then remand claims by any non-diverse Plaintiffs.  But just as with fraudulent misjoinder, Defendants' request again asks this Court to manufacture its own jurisdiction through severance, when the Court has *no* authority to hear the case in the first place.  Courts in this district and across the country have properly rejected similar requests time and again.

Third, Removing Defendants claim fraudulent joinder bars Plaintiffs from joining together to sue Defendant Insurers.  But that narrow doctrine has no application here because each non-

diverse Defendant has a plausible claim asserted against it.  That each Defendant is not liable to every Plaintiff is of no consequence.  In a multi-plaintiff, multi-defendant case like this one, proper joinder does not require that every plaintiff has a claim against every defendant.  The cases Defendants offer do not say otherwise.  They involve the very different situation where a single plaintiff joins a non-diverse defendant against whom it has no possibility of stating a valid claim.  But where every non-diverse Defendant is allegedly liable to at least one Plaintiff based on facts and law common to all Plaintiffs, as is the case here, the fraudulent joinder doctrine does not apply.

At bottom, Defendants do not—and cannot—contest the key facts that require remand of this case: this case involves New York Plaintiffs raising claims against New York Defendants (among other non-diverse parties), and those Defendants have been sued in their home state.  The resulting lack of complete diversity, and Removing Defendants' plain violation of the removal statute, means that this Court lacks authority to hear this case.  The action must be remanded, in its entirety, to New York Supreme Court in Kings County.[1]

## BACKGROUND AND PROCEDURAL HISTORY

On August 4, 2020, Plaintiffs, a broad group of restaurants and bars located primarily in New York City, filed a Complaint (ECF No. 1-1), which Plaintiffs amended on August 25, 2020 (ECF Nos. 1-40 & 1-41), against Defendant Insurers in New York Supreme Court, Kings County.  Plaintiffs' Amended Complaint asserts all of its claims under New York law, (ECF No. 1-41 at 159–224), including claims for declaratory relief, breach of contract, and unjust enrichment.

---

[1] Without conceding federal jurisdiction over this matter, Plaintiffs reserve the right to seek an order requiring that Defendants pay Plaintiffs' attorneys' fees and costs incurred as a result of this improper removal pursuant to 28 U.S.C. § 1447(c).  *See, e.g.*, *Kahlon v. Yitzhak*, 270 F. Supp. 3d 583, 590 (E.D.N.Y. 2017) (awarding attorneys' fees where defendant removed on erroneous theory of diversity).

Specifically, Plaintiffs allege that they each had an all-risk commercial property insurance policy that included business interruption coverage with at least one Defendant Insurer; that they suffered business income losses stemming from the direct physical loss or damage their properties sustained as a result of executive orders issued to shut down or physically alter their physical properties so that they could not function as intended; that they submitted a claim to their respective Defendant Insurer for business interruption coverage; and that the Defendant Insurer improperly denied (or constructively denied) coverage for these losses on the ground that each Plaintiff had not suffered direct physical loss or damage, as required by the Policies.

Plaintiffs' claims were therefore properly joined in a single action under New York law. Plaintiffs' claims arise out of a common series of transactions and occurrences—namely, the issuance of executive orders that detrimentally altered and physically impaired the functionality of their premises—and raise a common question of law, namely whether such orders caused direct physical loss or damage to Plaintiffs' insured properties under industry-standard policy terms common to all Policies purchased by Plaintiffs.

Plaintiffs' decision to bring Plaintiffs' claims in one action was eminently reasonable and efficient. Each Plaintiff faces the same legal problem of having been denied business interruption coverage by its insurance company under a policy it reasonably anticipated would cover its losses. Plaintiffs all around the country have engaged lawyers to litigate these claims against insurance companies and resolve this question. In the interest of efficiency for the courts and their businesses, and to avoid the risk of inconsistent judgments, Plaintiffs here brought these cases together to resolve the common question of insurance coverage under common language in a single forum, without the need for dozens of individual cases or litigation over class action treatment. As noted above, New York's joinder rules encourage this efficient approach to litigation.

On September 4, 2020, Defendant Acceptance Indemnity Insurance Company ("Acceptance") removed this action to this Court.  (ECF No. 1.)  As of the filing of this Motion, 21 other Defendants have filed notices of consent to removal.[2]  Under the removal statute, Defendants have removed the *action* as a whole, and not any subdivision thereof.  *See* 28 U.S.C. § 1441 (providing that a "*civil action* brought in a State court . . . may be removed by the defendant or the defendants."  (emphasis added)).

## LEGAL STANDARD

The Supreme Court has "often explained that 'federal courts are courts of limited jurisdiction,'" and that "district courts may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (citations omitted).  A federal court has subject matter jurisdiction where complete diversity of citizenship exists among all parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).  Diversity jurisdiction "is destroyed if any citizens of the same state appear on both sides of an action." *In re Ace Sec. Corp. RMBS Litig.*, 2015 WL 1408837, at *2 (S.D.N.Y. Mar. 26, 2015).

The defendant seeking removal "has the burden of establishing that removal is proper," including "proving that jurisdiction and procedural requirements are met."  *Lora v. S.J. Costa & Son Trucking, Inc.*, No. 16-CV-3917 (MKB), 2016 WL 4661043, at *1 (E.D.N.Y. Sept. 7, 2016).  "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute

---

[2] *See* ECF No. 11 (United Specialty); ECF No. 14 (Lexington); ECF No. 15 (Western World); ECF No. 19 (Argo Managing Agency, Brit Syndicates, Catlin Underwriting Agencies, Liberty Managing Agency, Tokio Marine-Kiln Syndicates); ECF No. 27 (Arch Specialty); ECF No. 30 (HDI Global); ECF No. 45 (Arch Insurance); ECF No. 46 (Watford Specialty); ECF No. 52 (National Fire & Marine); ECF No. 53 (Ohio Security); ECF No. 54 (Liberty Mutual Fire); ECF No. 58 (Metropolitan Property & Casualty); ECF No. 59 (Travelers Casualty); ECF No. 60 (Travelers Excess); ECF No. 61 (Charter Oak); ECF No. 62 (Admiral Indemnity); ECF No. 66 (Citizens Insurance).

narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013).  Here, it is plain that this Court does not have jurisdiction.

## ARGUMENT

**I.     THIS COURT LACKS JURISDICTION BECAUSE THERE IS NOT COMPLETE DIVERSITY AND SEVERAL DEFENDANTS RESIDE IN NEW YORK.**

Based on several hornbook principles of jurisdiction and removal, this Court must remand this action to state court.

First, the Court lacks subject matter jurisdiction over this action, because there is not complete diversity between the parties.[3]  An action is removable on the basis of diversity jurisdiction *only* if there is "complete diversity between all named plaintiffs and all named defendants," *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005), meaning that "*all* plaintiffs must be citizens of states diverse from those of *all* defendants."  *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014) (emphasis added).  Here, at least seven Defendants are citizens of New York,[4] and most of the Plaintiffs are citizens of New York.  (Am. Compl., ECF No. 1-40 ¶¶ 32–125.)  In addition, many of the Plaintiffs are citizens of other states in which Defendants are citizens, including, among others, Connecticut, New Jersey, Delaware, Massachusetts, and North Carolina, further demonstrating the lack of diversity on both sides of the action.[5]  *See, e.g.*, *Gerbo v. Kmart Corp.*, No. 14-CV-4866 (MKB) (LB), 2015 WL 6691603, at *2

---

[3] Besides diversity of citizenship, no other basis for jurisdiction is asserted or available.

[4] These include Defendants Greater New York Mutual Insurance Company, Seneca Insurance Company, Inc., Sompo America Insurance Company, Strathmore Insurance Company, Utica First Insurance Company, Wesco Insurance Company, and Zurich American Insurance Company.  (*See* Am. Compl., ECF No. 1-40 ¶¶ 139, 151, 153–54, 162, 164, 167.)

[5] (*See* ECF No. 68, Plaintiffs' Local Rule 81.1 Statement (listing Plaintiffs' citizenship in New York, New Jersey, Connecticut, Delaware, Massachusetts, Texas, and North Carolina, among others).)  Even among the Removing Defendants, for instance, Defendant Acceptance is a North Carolina citizen, (*see* ECF No. 1 ¶ 5), Defendants Western World, Arch Specialty, and Arch Insurance are New Jersey citizens, (*see* ECF No. 15 ¶ 6; ECF No. 27 ¶ 8; ECF No. 45 ¶ 8), and Defendants United Specialty and Lexington are Delaware citizens. (*See* ECF No. 11 ¶ 7; ECF No. 14 ¶ 6).  In fact, several of the Removing Defendants are not even

(E.D.N.Y. Nov. 3, 2015) (remanding action because although one defendant was diverse, the plaintiff and the other defendant were New York residents).  Removing Defendants do not dispute these facts, which alone destroy diversity and necessitate remand here.

Second, and quite independent from the lack of diversity, this Court must also remand because at least one—and in reality *seven*—of the defendants is a citizen of the forum state.  It is black letter law that a case is not removable if one of the defendants is a citizen of the forum state. 28 U.S.C. § 1441(b)(2); *Lincoln*, 546 U.S. at 84.  Here, seven of the Defendants are citizens of New York—the forum jurisdiction—and therefore the case must be remanded to state court.  *In Suk Chai v. Big Boy Coach, Inc.*, No. 13-CV-00746 (MKB), 2013 WL 5676484, at *3 (E.D.N.Y. Oct. 17, 2013) (remanding action that was improperly removed from New York state court due to presence of New York citizen-defendants).[6]

---

diverse from the Plaintiffs with whom they have contracted to provide insurance coverage. (*Compare, e.g.*, ECF No. 15 ¶ 6 (listing Defendant Western World as a New Jersey citizen), *with* ECF No. 68 ¶¶ 70, 85 (listing Plaintiff Whany LLC d/b/a Cafe Wha? and Plaintiff 189 Chrystie Partners LP d/b/a The Box as citizens of New Jersey, among other states), ECF No. 45 ¶ 8 (listing Defendant Arch Insurance as a New Jersey citizen), *with* ECF No. 68 ¶ 10 (listing Plaintiff City Winery LLC as a New York and New Jersey citizen, among other states), ECF No. 27 ¶ 8 (listing Defendant Arch Specialty as a New Jersey citizen), *with* ECF No. 68 ¶¶ 46, 77, 84 (listing Plaintiffs No Moore Oysters, LLC d/b/a Smith & Mills, Yves, LLC d/b/a Holy Ground, 135 West B Food & Drink, LLC d/b/a Tinys as New York and New Jersey citizens, among other states), ECF No. 61 ¶ 7 (listing Defendant Travelers Excess as a Connecticut citizen) *with* ECF No. 68 ¶ 3 (listing Plaintiff Aurify Brands, LLC as a New York and Connecticut citizen, among other states), *and* ECF No. 62 ¶ 7 (listing Defendant Admiral as a Delaware and New Jersey citizen) *with, e.g.*, ECF No. 68 ¶¶ 7, 31, 74 (listing Plaintiffs Bobo Restaurant LLC d/b/a Bobo, Javelina Tex-Mex LLC d/b/a Javelina, and 18 Greenwich Avenue LLC d/b/a Rosemary's as Delaware and New Jersey citizens, among other states).)

[6] This action should be remanded to state court for the additional reason that only 22 of the 34 non-forum Defendants have consented to removal, thus violating the rule of unanimity, which requires the consent of all defendants for a case to be removed to federal court.  *See* 28 U.S.C. § 1446(b)(2)(A).  "Where a defendant fails to comply with the rule of unanimity, courts have very little discretion—if any—to forgive it." *Cole v. City of New York*, 2020 WL 3618422, at *2 (S.D.N.Y. July 2, 2020) (listing three exceptions, none of which are applicable here).

## II.   DEFENDANTS' ATTEMPTS TO CIRCUMVENT THE COMPLETE DIVERSITY REQUIREMENT AND REMOVAL STATUTE FAIL.

Faced with this clear authority undermining their position, Defendants urge the Court to blue-pencil Plaintiffs' complaint and disregard non-diverse parties for purposes of removal and subject matter jurisdiction.  In other words, Defendants ask the Court to *manufacture* diversity jurisdiction by resorting to one of three inapplicable procedural devices: (i) fraudulent misjoinder, (ii) severance, or (iii) fraudulent joinder.  The Court should reject this improper attempt to evade the clear restrictions on federal jurisdiction and remand.

### A.   Fraudulent Misjoinder Is a Widely Rejected Doctrine and Is Inapplicable To This Case.

The premise of Defendants' removal of this action is that the Court should subdivide the case among insurer-insured pairings and consider each as a separate action for diversity jurisdiction purposes.  That approach to removal should be roundly rejected.  The concept behind Defendants' attempt to remove has been labeled "fraudulent *mis*joinder"—a widely criticized doctrine which purports to allow a federal court that lacks subject matter jurisdiction to create its own jurisdiction by severing non-diverse parties.  The doctrine should be rejected here.

#### 1.   The Court should reject entirely the fraudulent misjoinder doctrine because it is an improper expansion of federal court jurisdiction.

The Second Circuit has not opined on the fraudulent misjoinder doctrine, and district courts within the jurisdiction have criticized the doctrine, making clear that to the extent the doctrine has any validity, it has no application to this case.  This Court should follow suit and reject its application here.

A small number of courts have applied the doctrine of fraudulent misjoinder to expand a federal court's diversity jurisdiction when defendants were not properly joined under state joinder rules.  It was recognized first (as "egregious" misjoinder) by the Eleventh Circuit in *Tapscott v.*

*MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Since then it has been accepted by only one other Court of Appeals (the Fifth Circuit),[7] has been broadly criticized by courts elsewhere, *see, e.g.*, *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1211 (D. Nev. 2018) (noting "the sheer volume of . . . case law rejecting the fraudulent misjoinder doctrine"), and has been almost universally rejected by district courts within the First, Sixth, Seventh, and Ninth Circuits.[8] Within the Second Circuit, only a few courts have analyzed it,[9] and just two courts have found that it applies only in one narrow set of circumstances—pharmaceutical mass tort litigation—which, as explained below, has no relation to this case.

As numerous courts have explained, "[t]he reasons against the [fraudulent misjoinder] doctrine are many and persuasive." *Hampton*, 319 F. Supp. 3d at 1211. First, as one court in this district explained, "in the absence of any clear direction from the Supreme Court or Congress, this court is reluctant to extend the jurisdictional confines of the federal courts by wading into the uncharted waters of fraudulent-egregious misjoinder." *A. Kraus & Son v. Benjamin Moore & Co.*,

---

[7] *See In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002). The Fifth Circuit's decision in *Benjamin Moore* was brief and without much substantive analysis, leading other courts to note that the "endorsement given to the doctrine by the Fifth Circuit is somewhat open to question." *Bird v. Carteret Mortg. Corp.*, 2007 WL 894841, at *3 (S.D. Ohio Mar. 22, 2007); *see also Alegre v. Aguayo*, 2007 WL 141891, *5 n.1 (N.D. Ill. January 17, 2007) ("It is not entirely clear that the Fifth Circuit has 'adopted' the *Tapscott* test.").

[8] *See Wangers v. AIG Prop. Cas. Co.*, 2020 WL 3790836, at *4 (C.D. Cal. July 7, 2020) (concluding that the "doctrine of fraudulent misjoinder" is not "good law in this Circuit" based on wholesale rejection among district courts); *Proulx v. Mintzer*, 2020 WL 3105034, at *7 (D. Mass. June 11, 2020) (noting that the only district courts in the circuit to consider the doctrine "both rejected the doctrine outright"); *Staubus v. Purdue Pharma, L.P.*, 2017 WL 4767688, at *4 (E.D. Tenn. Oct. 20, 2017) (noting that "only one" district court in the Sixth Circuit has recognized the doctrine, and that opinion "has been questioned"); *Creighton v. Bristol-Myers Squibb & Co.*, 2013 WL 12333214, at *3 (N.D. Ill. May 10, 2013) (listing the "numerous other district courts in this Circuit [which have] refused to apply the *Tapscott* fraudulent misjoinder doctrine).

[9] *See, e.g.*, *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, 2015 WL 4508739, at *6 (S.D.N.Y. July 24, 2015) (applying doctrine as if it were valid but finding it inapplicable, and granting motion to remand); *A. Kraus & Son v. Benjamin Moore & Co.*, 2006 WL 1582193, at *4 (E.D.N.Y. June 7, 2006) (noting criticisms of the doctrine and finding it inapplicable, and granting motion to remand).

2006 WL 1582193, at *5 (E.D.N.Y. June 7, 2006).  Courts have consistently refused to apply fraudulent misjoinder because it is an "improper expansion of the scope of federal diversity jurisdiction," *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 852 (S.D. Ill. 2006), that requires a federal court to scrutinize "questions of joinder under state law" in order to *manufacture* diversity jurisdiction by severing non-diverse defendants who face viable state law claims.  *Hampton*, 319 F. Supp. 3d at 1211–12 (noting that the doctrine "requires the Court first—in full recognition of the lack of diversity jurisdiction—[to] sever part of the case and *only then* find it has jurisdiction").  In sum, the doctrine contravenes the Supreme Court's insistence on the limits of federal jurisdiction, which has grown only clearer in recent years.  *See, e.g.*, *Home Depot*, 139 S. Ct. at 1747–48 (noting limits to federal jurisdiction and interpreting "defendant" in the removal statute not to include a third-party counterclaim defendant).

Second, the doctrine suffers from a lack of clarity and consistency.  In *Tapscott*, a case in which, unlike here, the plaintiffs did not even contest that their claims were misjoined, the court cautioned that not every misjoinder constitutes fraudulent misjoinder; only the attempts to join parties that are "so egregious as to constitute fraudulent joinder" will qualify.  77 F.3d at 1360. Since then, "courts have struggled to arrive at a uniform, working standard as to what constitutes 'egregious' fraudulent misjoinder such that the existence of non-diverse parties and claims must be overlooked for purposes of conferring federal jurisdiction."  *A. Kraus*, 2006 WL 1582193, at *5; *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 379 (S.D.N.Y. 2006) (noting that "courts have wrestled with the . . . definition of an 'egregious misjoinder' of claim" and that it "has been the focus of … critical commentary").  Rather than ignoring these myriad criticisms and

doctrinal inconsistencies, this Court should decline to expand federal jurisdiction and reject the use of the doctrine here.[10]

Third, the fraudulent misjoinder doctrine is contrary to the rule that "plaintiffs . . . are the masters of their complaints," and may "avoid removal to federal court" by structuring their lawsuit as they so choose. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013).  Courts have declined to apply the doctrine to show the requisite deference to plaintiffs' choices as masters of the complaint. *See, e.g.*, *In re Paulsboro Derailment Cases*, 2014 WL 197818, at *4 (D.N.J. Jan. 13, 2014) ("Even if certain parties are added to prevent removal, that is [plaintiffs'] privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum.'" (quoting *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000)).  This Court is thus bound to respect Plaintiffs' decision to structure their complaint as they did to resolve their state-law claims efficiently in New York state court.

Fourth, the question that underlies fraudulent misjoinder—whether the joinder of Plaintiffs' claims is proper—is a question of *state* joinder law[11] and should be decided, if at all, by the state court in which the case was originally brought.  Indeed, numerous courts have found that the preferred approach is to "require the defendant to challenge the claimed misjoinder in state court and, if that court severs the claims and diversity exists, to then seek removal to federal court." *Hampton*, 319 F. Supp. 3d at 1211–12; *see also In re Prempro Prod. Liab. Litig.*, 591 F.3d 613,

---

[10] *See Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 871 (N.D. Ohio 2008) ("Whether to apply the doctrine in the first place, whether the doctrine requires egregious misjoinder or some other level of bad faith before it can be invoked, whether to apply state or federal joinder law, and whether a federal court should be deciding issues of state joinder law in the first instance are among the unresolved inquiries the Court declines to decide here.").

[11] *See, e.g.*, *Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, 2014 WL 7004033, at *3 (S.D.N.Y. Dec. 11, 2014) (noting that the "majority of federal courts evaluate claims of fraudulent misjoinder by applying the relevant state law rule for permissive joinder rather than the federal rule" (internal quotation marks omitted)).

624 n.8 (8th Cir. 2010) (rejecting application of fraudulent misjoinder and noting that "the preferable course of action may have been for defendants to challenge the misjoinder in state court before it sought removal"); *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 600 (E.D. Ky. 2011) ("[I]n light of . . . the numerous unsettled doctrinal questions [in the fraudulent misjoinder analysis], the Court agrees with the other district courts that have left the whole enterprise to the state courts."). This Court should follow the lead of these courts, remanding this action to state court for any severance analysis.

### 2. The fraudulent misjoinder doctrine is inapplicable to the facts of this case.

Even if the Court were to recognize the doctrine of fraudulent misjoinder, the doctrine does not apply to the facts as pled here. In the very few cases to apply the doctrine in this jurisdiction, a demanding standard of "egregiousness" governed: defendants must show "(1) that there is outright fraud in the pleading of the facts supporting joinder or (2) that there is no possibility, based on the pleadings, that the parties are properly joined under applicable joinder rules." *In re Fosamax Prod. Liab. Litig.*, 2008 WL 2940560, at *4 (S.D.N.Y. July 29, 2008). A finding of "mere misjoinder" is insufficient. *Federal Ins. Co.*, 422 F. Supp. 2d at 379; *see also Fosamax*, 2008 WL 2940560, at *8 (holding that where propriety of joinder under California law was "somewhat close," the "Court cannot conclude that plaintiffs' claims were egregiously misjoined"). Here, Removing Defendants have not shown that the non-diverse Defendant Insurers are misjoined under New York's permissive joinder rules, N.Y. C.P.L.R. 1002(a)-(b), much less that the misjoinder is "so egregious" as to be "fraudulent." *Tapscott*, 77 F.3d at 1360. Removing Defendants fall far short of clearing this high bar.

First, Removing Defendants do not attempt to argue "outright fraud" in the pleading, nor could they, so that prong is not met.

Second, Removing Defendants cannot show that there is "no possibility" that the parties are properly joined.[12] To the contrary, the joinder of plaintiffs and defendants in the Amended Complaint was entirely proper under New York's liberal joinder rules, and Defendants have given this Court no basis to conclude otherwise. *See Leone v. Bd. of Assessors*, 953 N.Y.S.2d 157, 159 (2d Dep't 2012) (underscoring that New York's joinder rules should be "liberally construed"); *Aviyon Med. Rehab., P.C. v. Allstate Ins. Co.*, 791 N.Y.S.2d 867, at *2 (Sup. Ct. Kings. Cnty. 2004) (explaining that New York maintains a "policy of liberal joinder" in order "to prevent multiplicity of suits" and "to reduce the caseload of the courts and its personnel and avoid unnecessary expenditure of time, money and manpower").

In particular, under New York's permissive rule for joinder of plaintiffs, "[p]ersons who assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences, may join in one action as plaintiffs if any common question of law or fact would arise." N.Y. C.P.L.R. § 1002(a). Likewise, for defendants, "[p]ersons against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if any common question of law or fact would arise." *Id.* § 1002(b).

Here, Plaintiffs' claims comfortably satisfy New York's joinder standard. They present a common question of law arising out of common factual circumstances. Plaintiffs' substantial losses all derive from a common occurrence—the unprecedented state and municipal executive

---

[12] As noted above, the "'majority of federal courts evaluate claims of fraudulent misjoinder by applying the relevant state law rule for permissive joinder rather than the federal rule." *Sons of the Revolution*, 2014 WL 7004033, at *3 (citation omitted). In any event, the New York rule is "nearly identical" to its federal counterpart. *Id.*; *see* Fed. R. Civ. P. 20(a).

orders (described as the Shutdown Executive Orders and Partial Reopening Executive Orders in the Amended Complaint)—which caused direct physical loss and damage to Plaintiffs' properties by requiring physical, detrimental alterations that rendered them non-functional or only partially functional as restaurants or bars.  (*See* Am. Compl. ¶¶ 1–4, ECF No. 1-40.).   After Plaintiffs submitted timely claims to Defendant Insurers for their unprecedented losses, Defendants— indeed, the insurance industry as a whole—denied coverage based on the same industry-standard language in the Policies, contending that Plaintiffs did not sustain the requisite "direct physical loss of" or "damage to" Plaintiffs' insured properties.  (*Id.* ¶¶ 18–21.)  Consistent with New York's liberal joinder rules, and to promote New York's policy of judicial economy and avoiding duplicative litigation, Plaintiffs brought their state law claims in one action so that a single New York state court could decide whether the executive orders indeed caused direct physical loss or damage to Plaintiffs' properties under this common language.  *See, e.g.*, *Hempstead Gen. Hosp. v. Liberty Mut. Ins. Co.*, 521 N.Y.S.2d 469, 470 (2d Dep't 1987) (permitting joinder of plaintiffs' claims for twenty-nine separate accidents because the claims arose "out of a uniform contract of insurance" and involved the same insurance law).[13]

Notably, Removing Defendants do not contest that there are common questions of law in this case.  (*See, e.g.*, Notice of Removal ¶ 8, ECF No. 1 (asserting only that there are "no common questions of fact").)  This is understandable: whether the Shutdown Executive Orders and Partial Reopening Executive Orders caused direct physical loss or damage to Plaintiffs' insured properties

---

[13] *See also Brardo v. Am. Hope Group Inc.*, 2014 WL 10342434, at *3 (N.Y. Sup. Ct. Queens Cnty. Sep. 24, 2014) (permitting joinder because "plaintiffs are similarly situated in that each entered into similar agreements with the defendants to obtain the same services," "[e]ach plaintiff allegedly had the same result . . . as a result of their respective contract," and "the same questions of[] law arise with respect to the interpretation [and] breach of the contract").

is *the* common question of law underpinning every claim in the case.  This common legal question is sufficient to meet the requirements of New York's joinder statute.  *See* N.Y. C.P.L.R. § 1002 (a)–(b) (requiring any common question of "law *or* fact" for joinder (emphasis added)); *see also* Fed. R. Civ. P. 20(a)(1)(B), (2)(B) (same); *see also Leone*, 953 N.Y.S.2d at 159 (under New York's "liberally construed" joinder statute, plaintiffs' challenge of separate real estate assessments that made the same erroneous conclusion raised "common issues of law and fact").  Accordingly, Plaintiffs' claims were properly joined, and Removing Defendants' contention that there "is no other reason to join these claims together other than to prevent the insurers form purs[u]ing their rights in federal court" is false.  (ECF No. 11 ¶ 16.)

Indeed, federal courts in this Circuit have declined to find fraudulent misjoinder in analogous circumstances.  In *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, for example, the court declined to find fraudulent misjoinder where a group of plaintiff-businesses sued their respective insurance companies to recover the plaintiffs' "loss of business income" resulting from the "same occurrence"—the loss of power following Hurricane Sandy. 2015 WL 4508739, at *7 (S.D.N.Y. July 24, 2015).  As in this case, the plaintiffs alleged that their "insurance policies purportedly insured Plaintiffs against the very risks that occurred" and the "resulting loss of business income." *Id.*  In that case, such losses arose from a utility company's failure to provide power services, *id.*; in this case, Plaintiffs' losses arise from the state and local executive orders rendering Plaintiffs' properties nonfunctional.  As in *Kips Bay*, this Court should find fraudulent misjoinder inapplicable here.  *See also Sons of the Revolution*, 2014 WL 7004033, at *4 (finding that factual overlap on the issue of "the cause of damage" in insurance claims, including for business interruption, was sufficient to defeat claim of fraudulent misjoinder).

Defendants' reliance on *In re Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570 (E.D.N.Y. May 17, 2013) is misplaced.  In that case, the court noted the legal community's general skepticism regarding the fraudulent misjoinder doctrine and its expansion of federal court jurisdiction, *see id.* at *5, but held that the doctrine was appropriate in the specific context of pharmaceutical mass tort litigation, where the "only common link among" the plaintiffs "was a defective drug or medical device," with widely varying dosages, durations, and resulting conditions.  *Id.* at *8, 13–14.[14]  In *Propecia*, the only common nexus between the 54 plaintiffs from 23 states and the District of Columbia was that they had ingested the same general type of drug—the plaintiffs did not even specify which brand of allegedly defective drug each plaintiff ingested.  *Id.* at *12.  Applying Missouri joinder law to these facts, the court found there were too many "divergent issues of law and fact that will arise as to each plaintiff's purchase and use" of the different, unidentified brands of the drug, ingested at different times and with different effects. *Id.* at *14.  That is a far cry from this case, in which Plaintiffs are nearly all New York restaurants and bars that were affected in the same ways by the same executive orders at the same time, such that their losses arise from the same occurrence, and their legal claims turn on the same industry-standard policy language.

Finally, even if the Court were somehow to find egregious fraudulent misjoinder here, the application of such doctrine would not create jurisdiction for many of the Removing Defendants whose claims must still be remanded for lack of diversity.  In *Propecia*, only three of the fifty-four plaintiffs were non-diverse, and the court thus severed their claims and remanded the three non-

---

[14] Following the court in *Propecia*'s suggestion that the fraudulent misjoinder doctrine was suitable in the pharmaceutical mass tort context only, other courts have limited the doctrine to that singular context. *See Paulsboro Derailment*, 2014 WL 197818, at *4 (noting that the doctrine has "particular relevance in the pharmaceutical context," and that the "there is no reason to break new ground … and apply fraudulent misjoinder" in a chemical tort action resulting from a railroad crash).

diverse plaintiffs back to state court.  *Id.* at *15.  But the analysis is not so clean here.  The Removing Defendants attempt to evade this question by simply asking for this Court to "assume jurisdiction."  (ECF No. 1 at 4.)  However, the Removing Defendants do not specify how the Court may do that, and which of the many non-diverse parties the Court should sever.  Unlike in *Propecia*, nearly half of the Defendants either contracted with a non-diverse Plaintiff, or are citizens of New York and thus cannot remove the action to federal court.[15]  Even where there is a diverse pairing, fundamentally changing Plaintiffs' action into a series of individual actions is not as simple as Removing Defendants make it out to be.  As but one example, Defendant Acceptance removed on the grounds that its named insured—Plaintiff FGNY ParentCo, LLC ("FGNY")—is diverse from Acceptance.  (ECF No. 1 ¶¶ 9–11.)  But as alleged in the Amended Complaint, Acceptance insures 14 Five Guys locations in New York City that are owned by FGNY and operated by Plaintiff Aurify Brands, LLC ("Aurify").  (Am. Compl. ¶¶ 48, 179–89, ECF No. 1-40.)  Aurify, a New York and Connecticut citizen, among other states,[16] also owns and operates other groups of chain restaurants in New York City insured by Defendant Charter Oak Fire Insurance Co. ("Charter Oak"), a Connecticut citizen.  (*Id.* ¶¶ 155, 184.)  A hypothetical action of FGNY and Aurify against Acceptance and Charter Oak —still improperly carved-out from Plaintiffs' properly joined complaint—would lack complete diversity, and this Court would still not have jurisdiction to hear this improperly severed claim.

---

[15] As set forth in Plaintiffs' Local Rule 81.1 Statement, the members of many Plaintiff LLCs are citizens of other states where Defendants are citizens, destroying diversity even as between many Plaintiffs and their respective contracting Defendant. *See, e.g.*, *ICON MW, LLC v. Hofmeister*, 950 F. Supp. 2d 544, 546 (S.D.N.Y. 2013) (holding that a court must look to the citizenship of "all members" of an LLC for diversity purposes).

[16] (*See* ECF No. 68 ¶ 3.)

This action was properly joined pursuant to New York's liberal joinder rules, giving this Court no basis to exercise federal court jurisdiction based on the extreme and widely condemned theory of fraudulent misjoinder.  The Court should therefore remand the entire case to state court.

**B.    The Court Cannot Grant Severance Under Rule 21 Because the Court Does Not Have Jurisdiction, nor Would Severance Be Warranted.**

Several Removing Defendants assert a second procedural device through which they ask this Court to create complete diversity in order to seize jurisdiction over this case.  Specifically, Removing Defendants ask the Court to use Federal Rule of Civil Procedure 21 to "sever the claims and remand the non-diverse defendants from this case."  (ECF No. 11 at ¶ 18.)  Much like fraudulent misjoinder, this strategy of seeking severance to *manufacture* complete diversity out of a case where it does not otherwise exist has been criticized and routinely rejected by courts in the Second Circuit and elsewhere, for many of the same reasons as fraudulent misjoinder.[17]  This Court should reject it here as well.

**1.    Rule 21 cannot be used to create jurisdiction where none exists.**

This Court cannot sever any claims because, as currently constituted, the Court does not have jurisdiction over this case.  Unlike the uncontroversial use of Rule 21 in cases that "*began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent."  *Sons of the Revolution*, 2014 WL 7004033, at *2 (internal quotation marks and brackets omitted) (rejecting the use of Rule 21 in the removal context); *Kips Bay Endoscopy*, 2015 WL 4508739, at *4 (same).  This Court should likewise reject Removing Defendants' attempt to use Rule 21 to create jurisdiction here.

---

[17] *See, e.g.*, *Hampton*, 319 F. Supp. 3d at 1214 (noting that fraudulent misjoinder and the use of Rule 21 post-removal both "rely[] on the same confounding circular logic by which a removing defendant asks the court to act without jurisdiction as a means to create jurisdiction," and that defendants who seek severance of non-diverse parties after removal are attempting "an improper end-run around courts' rejection of the fraudulent misjoinder doctrine" (internal quotation marks and brackets omitted)).

Defendants' severance request is also an express violation of Rule 82 of the Federal Rules of Civil Procedure, which states that "[t]hese rules do not extend . . . the jurisdiction of the district courts."  Fed. R. Civ. P. 82; *see Nolan v. Olean Gen. Hosp.*, 2013 WL 3475475, at *8 (W.D.N.Y. July 10, 2013) (rejecting defendants' attempt to rely on Rule 21 to create jurisdiction post-removal because, among other reasons, "Rule 82 precludes the use of Rule 21 to create jurisdiction through severance of non-diverse parties"); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and brackets omitted)).  Accordingly, "[t]o use a Rule … to *establish* jurisdiction would be to bootstrap jurisdiction into existence; it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."  *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 (2d Cir. 2002) (emphasis in original).  As with Removing Defendants' tenuous reliance on egregious fraudulent misjoinder, the Court should reject the use of Rule 21 to manufacture jurisdiction here.

The Rule 21 case law relied upon by Removing Defendants provides no support for their position.  Removing Defendants cite a number of decisions granting severance in cases that were not removed to, but rather *originated in*, federal court.  (ECF No. 11 ¶ 18.)  For example, several Defendants point to two unpublished orders from the Eastern District of Pennsylvania in actions involving business interruption insurance claims where the court severed *sua sponte* the insurer-insured party pairs.[18]  But these cases have no relevance because they were not removal actions; they were cases originally filed in federal court where the jurisdiction of the court was undisputed.

---

[18] *See Chattanooga Prof'l Baseball, LLC v. Phila. Indem. Ins. Co.*, No. 20-cv-03032 (E.D. Pa. June 25, 2020), Doc. 3; *Ultimate Hearing Sols. II, LLC v. Hartford Underwriters Ins. Co.*, No. 20-cv-02401 (E.D. Pa. July 8, 2020), Doc. 3.

Thus, Removing Defendants cite no case in which the court used Rule 21 to create jurisdiction where it did not already exist.

### 2.     Rule 21 severance would be improper on these facts.

Even if the Court could use Rule 21 to manufacture jurisdiction, severance would not be warranted.  In determining whether to invoke Rule 21, courts "consider whether severance will serve the ends of justice and further the prompt and efficient disposition of litigation," by looking to factors such as "whether the claims arise out of the same transaction or occurrence," "whether the claims present some common questions of law or fact," and "whether settlement of the claims or judicial economy would be facilitated." *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 288 F.R.D. 331, 332–33 (S.D.N.Y. 2013) (internal quotation marks omitted) (denying Rule 21 application).  Courts within the Second Circuit have declined to apply Rule 21 in removed cases where, as here, "dismissal of the non-diverse defendants pursuant to Fed. R. Civ. P. 21 … would result in duplicative, wasteful litigation in federal and state courts that could result in conflicting rulings." *Sons of the Revolution*, 2014 WL 7004033, at *3 (declining to sever claims).

As explained earlier, each Plaintiff's claim against each Defendant Insurer presents a common question of law—based on the construction of the same industry-standard business interruption coverage provisions—which arises from a common factual occurrence. *See Kips Bay Endoscopy*, 2015 WL 4508739, at *5 (rejecting Rule 21 severance where "the Insurers['] reasons for denying coverage are alleged to be the same").  Even if this Court had the authority to sever, the result would be duplicative and wasteful litigation.  This Court would have to remand the New York Defendants and the non-diverse pairings to state court, and the same common questions of law would continue to be litigated in that parallel state court action.  *See supra* note 5 & p. 17. Severance would unfairly require certain Plaintiffs to litigate the same issues in "two [or more]

parallel litigations: one in federal court against the diverse defendants and one in state court." *Rost v. Pfizer Inc.*, 502 F. App'x 51, 52–53 (2d Cir. 2012) (affirming denial of Rule 21 motion); *see also Nolan*, 2013 WL 3475475, at *10 (holding that "where—as here—the result of severance would be simultaneous litigation in different courts, it is not an abuse of discretion to deny severance"). Severance would improperly and unnecessarily prejudice Plaintiffs and would not "serve the ends of justice" as Rule 21 requires. *Crown Cork*, 288 F.R.D. at 332.[19]

### C.    Fraudulent Joinder Is Inapplicable.

Finally, Removing Defendants contend that the lack of complete diversity is irrelevant because, in their view, Plaintiffs have "fraudulently joined" Defendants. (*See, e.g.*, ECF No. 1 ¶¶ 9–11; ECF No. 11 ¶ 15.) Unlike fraudulent misjoinder and Rule 21—both of which have been roundly rejected by federal courts in the post-removal context—fraudulent joinder is a recognized doctrine, but it simply has no application here. Fraudulent joinder "prohibits a plaintiff from defeating diversity jurisdiction by improperly joining a non-diverse defendant 'with no real connection to the controversy.'" *Rose v. Horan*, No. 17-CV-6408 (MKB), 2018 WL 4344954, at *4 (E.D.N.Y. Sept. 11, 2018) (quoting *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d

---

[19] Removing Defendants also assert that the recent decision of the Judicial Panel on Multidistrict Litigation (JPML) declining to create an industry-wide MDL of business interruption insurance claims supports severance here. It does not. The standards that govern the JPML's decision and the factors it considers are entirely different than the severance standard under federal or New York rules of procedure. Importantly, the JPML considers whether actions pending in different federal courts should be transferred to a single court for "coordinated or consolidated pretrial proceedings"; it does not create an MDL for purposes of resolving all claims on the merits. *See Overview of Panel*, U.S. JPML (emphasis added), https://www.jpml.uscourts.gov/overview-panel-0. (last visited Sept. 24, 2020). And the movant seeking to create an MDL bears the burden to show that doing so makes sense "to avoid duplication of discovery, to prevent inconsistent pretrial rulings, and to conserve the resources of the parties." *Id.* But here, where Defendants seek severance after removal, Defendants bear the burden of showing that this Court has jurisdiction, and the Court must "resolv[e] any doubts against removability" in favor of Plaintiffs, as the masters of their complaint. *Lora*, 2016 WL 4661043, at *1. In short, the JPML's decisions about creating an MDL do not support Defendants' misguided attempts to have this Court exercise jurisdiction it does not otherwise have to sever Plaintiffs' properly joined claims.

209, 215 (2d Cir. 2010)).  Removing Defendants fail to establish that fraudulent joinder applies

here because it is *uncontested* that the non-diverse Defendants have viable claims pled against

them.

The party alleging fraudulent joinder "bears the heavy burden" of proving "by clear and

convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff," that one

of the following two circumstances applies: (1) "there has been outright fraud committed in the

plaintiff's pleadings," or (2) "there is no possibility, based on the pleadings, that *a* plaintiff can

state *a* cause of action against the non-diverse defendant in state court."  *Id.* (emphasis added)

(quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004); *Pampillonia

v. RJR Nabisco*, *Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)).

Removing Defendants do not even argue *either* prong applies here.  They neither claim an

actual fraud in Plaintiffs' jurisdictional allegations, nor do they suggest that there is a non-diverse

Defendant against whom none of the Plaintiffs could possibly state a cause of action.  Nor could

they do so, because each Defendant—diverse and non-diverse alike—has a claim pled against it

by at least one Plaintiff that was wrongfully denied insurance coverage by that specific Defendant.

(ECF No. 1-41 at 159–224.)

Instead, Removing Defendants argue that because *their* respective Plaintiff-insured(s)

cannot assert a claim against a non-diverse defendant,[20] the non-diverse defendants were

"fraudulently joined" and should be "ignored" for purposes of determining diversity jurisdiction.

(*See, e.g.*, ECF No. 1 at ¶¶ 9–10; ECF No. 11 ¶ 15.)  But this is not how the fraudulent joinder

doctrine works.  "[O]nly one" of the claims against a non-diverse defendant "need have a

possibility of success" for Removing Defendants' argument to fail.  *Rose*, 2018 WL 4344954, at

---

[20] As set forth above, this is not even true for all of the Removing Defendants. *See supra* note 5.

*5; *see also A. Kraus*, 2006 WL 1582193, at *4 (rejecting fraudulent joinder doctrine as inapplicable where the plaintiff pleaded "at least one claim involving non-diverse parties").

In this case, there is a valid claim against every Defendant:  each of Defendants' insureds has brought a claim against them for declaratory relief, breach of contract, and unjust enrichment pursuant to the Defendants' Policies.  It is thus undisputed that there is "at least one [viable] claim involving non-diverse parties."  *A. Kraus*, 2006 WL 1582193, at *4 (rejecting fraudulent joinder doctrine where plaintiff asserted a breach of contract claim, among other claims, against non-diverse parties to a contract).  Removing Defendants' cited case law does not support a finding of fraudulent joinder in circumstances where there is a viable claim pleaded against each defendant, nor could it.[21]  Thus, Removing Defendants' invocation of fraudulent joinder is little more than a rehash of their claim of fraudulent *mis*joinder, which should be rejected for the reasons set forth above.  *See supra* pp. 8–18.

Accordingly, this Court should reject Removing Defendants' invitation to use the doctrine of fraudulent joinder to disregard non-diverse Defendants against whom viable claims are alleged.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court remand the entire case to New York Supreme Court where it was filed for lack of subject matter jurisdiction.

---

[21] Defendants cite cases fitting the narrow confines of the fraudulent joinder doctrine, in which "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court."  *Briarpatch*, 373 F.3d at 302. (*See* ECF No. 11 ¶ 15; ECF No. 14 ¶ 13; ECF No. 15 ¶ 14.)  But even in *Briarpatch*, the court held that the defendants had not met their "heavy burden" to show that the plaintiffs had no possibility of stating a claim against the non-diverse defendant under New York collateral estoppel rules. 373 F.3d at 302.

Dated: September 25, 2020
     New York, NY

Respectfully Submitted,

*/s/ Jeremy M. Creelan*

Jeremy M. Creelan
Michael W. Ross
Seth H. Agata
Jenna E. Ross
Jacob D. Alderdice
JENNER & BLOCK LLP
919 Third Ave., 38th Floor
New York, NY 10022
Telephone:  212-891-1678
Email: jcreelan@jenner.com

*Attorneys for Plaintiffs*