**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
ABRUZZO DOCG, INC. d/b/a TARALLUCCIE VINO,
et al.

<table>
<tr><td>Plaintiffs,</td><td>Civil Action No:<br>1:20-cv-04160</td></tr>
</table>

v.

ACCEPTANCE INDEMNITY INSURANCE COMPANY,
et al.,

Defendants.
-----------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
40 Wall Street, 54th Floor
New York, New York 10005

*Attorneys for Defendant Acceptance Indemnity Insurance Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

LEGAL STANDARD ....................................................................................................... 4

    I.   FRAUDULENT MISJOINDER ........................................................................ 4

    II.  FRAUDULENT JOINDER ............................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.   FRAUDULENT MISJOINDER APPLIES TO DEFEAT REMAND ............................. 7

        A.   The EDNY Has Applied the Doctrine ........................................................ 7

        B.   The Doctrine Is Necessary to Prevent Gamesmanship ................................ 9

        C.   Plaintiffs' Claims Were Misjoined ......................................................... 12

            1.   Each Plaintiff's "Right to Relief," If Any, Arises Out of Its Distinct Policy ..... 13

            2.   No Common Question of Law or Fact Would Arise ......................................... 15

        D.   Although Not Required, This Misjoinder Is Egregious ............................. 17

    II.  FRAUDULENT JOINDER APPLIES TO DEFEAT REMAND .................................. 21

CONCLUSION ................................................................................................................. 23

## TABLE OF AUTHORITIES

<u>Cases</u>

*A. Kraus & Son v. Benjamin Moore & Co.*,
 No. CV 05-5487, 2006 WL 1582193 (E.D.N.Y. June 7, 2006) .......................................... 9, 10

*Aguoji v. Am. Sec. Ins. Co.*,
 No. 13-CV-5964, 2014 WL 116445 (E.D.N.Y. Jan. 10, 2014) ............................. 13, 14, 15, 17

*Asher v. Minnesota Mining and Manufacturing Co.*,
 No. 6:04-cv-522-DCR, 2005 WL 1593941 (E.D. Ky. 2005) ................................................... 8

*In re Benjamin Moore & Co.*,
 318 F.3d 626, 630-631 (5th Cir. 2002) .................................................................................... 8

*Booth Med., P.C. v. Eagle Ins. Co.*,
 4 Misc. 3d 1030(A), 798 N.Y.S.2d 343 (Dist. Ct. Nassau Cty. 2004) .................................... 14

*Bunnell v. Oklahoma MH Properties, LP*,
 No. CIV-12-372-R, 2012 WL 12863916 (W.D. Okla. May 11, 2012) ..................................... 8

*Chattanooga Prof'l Baseball v. Philadelphia Indem. Ins. Co.*,
 No. 20-cv-03032 (E.D. Pa. June 25, 2020) ............................................................................ 19

*In re COVID-19 Bus. Interruption Protection Ins. Litig.*,
 No. MDL 2942, 2020 WL 4670700 (U.S. Jud. Pan. Mult. Lit. Aug. 12, 2020) ................ 16, 20

*In re Diet Drugs*,
 No. 1203, 1999 WL 554584 (E.D. Pa. July 16, 1999) ......................................................... 8, 18

*Dolan v. Safeco Ins. Co. of Indiana*,
 297 F.R.D. 210 (E.D.N.Y. 2014) ........................................................................................... 13

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
 422 F. Supp. 2d 357 (S.D.N.Y. 2006) ...................................................................................... 7

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
 No. 11-3045, 2012 WL 1118780 (D.N.J. April 3, 2012) ......................................................... 8

*In re Fosamax Prod. Liab. Litig.*,
 No. 1:06-MD-1789 (JFK), 2008 WL 2940560 (S.D.N.Y. July 29, 2008) ............................. 4, 9

*GEICO v. Saco*,
  Nos. 12–CV–5633 (NGG)(MDG), 15–CV–634 (NGG)(MDG), 2015 WL 4656512 (E.D.N.Y.
  Aug. 5, 2015) ..................................................................................................................... 5, 21

*Greene v. Wyeth*,
  344 F. Supp. 2d 674, 684-85 (D. Nev. 2004)......................................................................... 8

*Hempstead General Hospital v. Liberty Mutual Insurance Co.*,
  521 N.Y.S.2d 469 (1987).......................................................................................................... 20

*Hughes v. Sears, Roebuck & Co.*,
  No. CIV.A. 2:09-CV-93, 2009 WL 2877424, at *7 (N.D.W. Va. Sept. 3, 2009) ...................... 8

*Intershoe, Inc. v. Filanto S.P.A.*,
  97 F. Supp. 2d 471 (S.D.N.Y. 2000)..................................................................................... 5, 21

*Kips Bay Endoscopy Center v. Travelers Indemnity Co.*,
  No. 1:14-cv-7153 ER, 2015 WL 4508739, at *1 (S.D.N.Y. July 24, 2015)............................ 20

*Lang v. Hanover*,
  3 N.Y.3d 350 (2004) ................................................................................................................. 5

*Mancinone v. Allstate Ins. Co.*,
  No. 3:20-CV-00082 (KAD), 2020 WL 5709675 (D. Conn. Sept. 24, 2020) ...................... 8, 17

*Milliet v. Liberty Mut. Ins. Co.*,
  No. CIV.A. 07-7443, 2008 WL 147821 (E.D. La. Jan. 11, 2008)............................................ 8

*Mount Sinai Hosp. v. Motor Vehicle Accident Indemnification Corp.*,
  291 A.D.2d 536, 536 (2002) ................................................................................................. 14

*Pampillonia v. RJR Nabisco, Inc.*,
  138 F.3d 459 (2d Cir. 1998)............................................................................................... 5, 9, 21

*In re Propecia (Finasteride) Prod. Liab. Litig.*,
  No. 12-CV-2049 JG VVP, 2013 WL 3729570 (E.D.N.Y. May 17, 2013)... 4, 7, 8, 9, 10, 17, 18

*In re Propecia (Finasteride) Prod. Liab. Litig.*,
  No. 12-MD-2331 (BMC)(PK), 2016 WL 3541543 (E.D.N.Y. June 23, 2016)..................... 4, 7

*Quinn v. Aetna Life & Cas. Co.*,
  616 F.2d 38 (2d Cir. 1980)..................................................................................................... 11

iii

*In re Rezulin Prod. Liab. Litig.*,
    168 F. Supp. 2d 136 (S.D.N.Y. 2001)........................................................... 7, 10, 17, 18

*Schoch v. Lake Champlain Ob-Gyn, P.C.*,
    184 A.D.3d 338 (N.Y. App. Div., 2020) .................................................................. 6

*Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*,
    No. 14 CIV. 03303 LGS, 2014 WL 7004033 (S.D.N.Y. Dec. 11, 2014) ............................. 4, 14

*Tapscott v. MS Dealer Serv. Corp.*,
    77 F.3d 1353 (11th Cir. 1996) ....................................................................... 10, 19

*Ultimate Hearing Solutions v. Hartford Underwriters Ins. Co.*,
    No. 20-2401 (E.D. Pa. July 8, 2020)..................................................................... 19

*Utica Mut. Ins. Co. v. Am. Re-Insurance Co.*,
    No. 6:14-CV-1558 MAD/TWD, 2015 WL 1897155 (N.D.N.Y. Apr. 27, 2015) ............... 11, 12

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)....................................................................... 5, 21, 22

*Wilson v. Republic Iron & Steel Co.*,
    257 U.S. 92 (1921).................................................................................... 8

*Z Bus. Prototypes v. Hartford Underwriters Ins. Co.*,
    No. 1:20-cv-10075 (D.N.J. Aug. 27, 2020) ........................................................... 20

Statutes

28 U.S.C. § 1332................................................................................... 6

28 U.S.C. § 1441................................................................................... 6

28 U.S.C. § 1446.................................................................................. 6, 12

Rules

FED. R. CIV. P. 20(a)................................................................................ 4, 14

N.Y. C.P.L.R. 1002................................................................. 4, 12, 13, 14, 15, 17

N.Y. C.P.L.R. 3001................................................................................. 6

Defendant Acceptance Indemnity Insurance Company ("Acceptance") submits this brief in opposition to Plaintiffs' Motion to Remand.[1]

## PRELIMINARY STATEMENT

The doctrines of fraudulent joinder and fraudulent misjoinder exist in jurisprudence specifically to prevent the *gamesmanship* undertaken by Plaintiffs. Plaintiffs parrot the mantra that they are the "masters of their complaint," but that privilege is not unfettered. It must be balanced against Defendants' statutory right of removal. In order to frustrate that right, Plaintiffs have stitched together the unrelated causes of action of 94 different businesses in different states that separately contracted with 41 different insurance companies at different times. Each Plaintiff procured one of 62 different insurance policies with different terms covering different locations. Each Plaintiff has causes of action against only the specific insurance company that issued an insurance policy covering that business. The only similarity is that Plaintiffs' separate insurance claims are related to the same general subject matter – the COVID-19 global pandemic. That is wholly insufficient to support the joinder of separate insurance claims. The Court should not permit Plaintiffs to manipulate the rules of civil procedure to frustrate Defendants' right of removal.

Accordingly, the Court should deny Plaintiffs' Motion to Remand, sever the action between FGNY and Acceptance, and maintain Acceptance's right of removal based on diversity jurisdiction. To the extent that other Defendants join in this Opposition, the Court should similarly sever those actions and maintain those Defendants' right of removal.

---

[1] Please see Exhibit A for a list of the Defendants joining in this brief. These Defendants oppose Plaintiffs' Motion to Remand with a consolidated brief for the Court's convenience and at Plaintiffs' request.

## STATEMENT OF FACTS

Plaintiffs misjoined 62 separate claims of 94 Plaintiffs against 41 Defendants to frustrate Defendants' right of removal. The Plaintiffs are, in their words, a "broad and diverse group" of businesses located across multiple states. *See* Plaintiffs' Amended Complaint, ECF Nos. 1-40 & 1-41 ("Am. Compl."), at p. 1, ¶¶ 32-125, 179-598; *see also id.* ¶¶ 42, 44-45, 51-52, 56, 77, 94, 99, 177. The businesses include fine dining establishments, live music venues, fast food restaurants, nightclubs, pastry shops, wineries, and a theater. *See id.* ¶¶ 2, 32-125, 179-598. These businesses allege that their respective property insurance carriers should cover the economic losses they sustained during the COVID-19 global pandemic. *See id.* ¶¶ 605-976. Some of these businesses completely stopped operations, others remained open to provide take-out or delivery services, while others already provided primarily to-go service, which they were permitted to continue. *See id.* ¶¶ 6-7, 179-598. Some Plaintiffs allege that their business was affected by the New York Executive Orders, while other Plaintiffs allege that they have been affected by orders from other states. *See id.* ¶ 177. Each business alleges claims against only the Defendant insurer that sold it an insurance policy. *See id.* p. 224, ¶¶ 599-984.

This "mother of all lawsuits" should properly be read as 62 separate actions. Each Plaintiff alleges the following claims against one of the 41 Defendant insurance companies that issued an insurance policy to that Plaintiff: (1) breach of the insurance policy issued by that Defendant to that Plaintiff; (2) a declaration of rights under that policy; and (3) unjust enrichment for that Defendant's retention of premiums paid by that Plaintiff in connection with that policy. *See id.* All three causes of action arise out of the insurance policy that the individual Plaintiff purchased from one of the Defendants. *See id.* As such, the action consists of 62 separate actions, each alleging

three causes of action under an insurance policy specific to the particular Plaintiff and particular Defendant.

There is no possibility that FGNY can recover from any Defendant other than Acceptance.[2] FGNY asserts no claims against, and seeks no relief from, any other Defendant. *See id.* Moreover, FGNY does not allege—nor does it have—any contract with any other Defendant. *See id.* ¶¶ 179-189, 749-754. Accordingly, there is no possibility that FGNY could recover from any Defendant other than Acceptance. Similarly, no Plaintiff other than FGNY can recover from Acceptance. No other Plaintiff asserts any claims against Acceptance or seeks any relief from Acceptance. *See id.* p. 224, ¶¶ 599-984. Moreover, no Plaintiff other than FGNY has alleged the existence of any contract with Acceptance. *See id.* Accordingly, there is no possibility that any other Plaintiff could recover from Acceptance.

As outlined in the Amended Complaint, FGNY obtained an insurance policy from Acceptance. *See id.* ¶ 187. The relationship between FGNY and Acceptance is defined by the terms and conditions of this policy. The 40 other Defendants issued separate insurance policies to different Plaintiffs. *See id.* ¶¶ 179-598. Those insurance policies are subject to different policy terms, conditions, limitations, and exclusions. *See generally* Am. Compl. Exhibits 1-65 (ECF Nos. 1-42 through 1-129). For example, the policy between FGNY and Acceptance excludes "loss or damage caused by or resulting from any virus." *See* ECF No. 1-44. The policies issued by some of the other Defendants have exclusions for loss or damage caused by "microorganisms,"[3] loss

---

[2] FGNY also cannot recover against Acceptance because FGNY has not alleged a covered loss pursuant to the policy. Accordingly, FGNY's claims are subject to early dismissal for failure to state a claim upon which relief can be granted.

[3] *See, e.g.*, ECF No. 1-5 (insurance policy issued by Defendant Zurich).

resulting from "contaminants or pollutants,"[4] and other exclusions. As such, resolution of one action would not resolve the other 61 actions.

## LEGAL STANDARD

### I.    FRAUDULENT MISJOINDER

Fraudulent misjoinder, also called procedural misjoinder, occurs where "a plaintiff [adds] claims to the complaint—either claims by other non-diverse plaintiffs or claims against other non-diverse defendants—which, although perhaps valid, are nevertheless not properly joined under the applicable permissive joinder rules." *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 JG VVP, 2013 WL 3729570, at *4 (E.D.N.Y. May 17, 2013); *see also In re Fosamax Prod. Liab. Litig.*, No. 1:06-MD-1789 (JFK), 2008 WL 2940560, at *4 (S.D.N.Y. July 29, 2008) ("[F]raudulent misjoinder occurs when a plaintiff attempts to defeat removal by misjoining the unrelated claims of non-diverse parties. In other words, the claims asserted by or against the non-diverse party who is joined lack a sufficient factual nexus to the case to support joinder under applicable rules of procedure.").

Under New York law,[5] misjoinder occurs where any element of permissive joinder is not met. *See In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 (BMC)(PK), 2016 WL 3541543, at *2 (E.D.N.Y. June 23, 2016) ("[I]t must consist of . . . a claim against a non-diverse party that state law does not permit to be asserted in the same action as a claim against a diverse party."). Rule 1002(a) of the Civil Practice Law and Rules ("CPLR") permits joinder of plaintiffs

---

[4] *See, e.g.*, ECF No. 1-19 (insurance policy issued by Defendant Lexington).

[5] The majority of federal courts apply the state rule for permissive joinder when analyzing the question of fraudulent misjoinder. *See Propecia*, 2013 WL 3729570, at *11. The EDNY has agreed with that approach. *See id.* As such, it is Acceptance's position that the Court should apply the state rule for permissive joinder, CPLR 1002. Nonetheless, CPLR 1002 is "nearly identical" to its federal counterpart, Rule 20(a) of the Federal Rules of Civil Procedure ("FCRP"). *See Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14 CIV. 03303 LGS, 2014 WL 7004033, at *3 (S.D.N.Y. Dec. 11, 2014). It is Acceptance's position there has been misjoinder under both CPLR 1002 and FRCP 20(a).

as follows: "Persons who assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences, may join in one action as plaintiffs if any common question of law or fact would arise." CPLR 1002(b) permits joinder of defendants as follows: "Persons against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if any common question of law or fact would arise." As set forth below and in Defendants' Motion to Sever,[6] Plaintiffs fail to satisfy these elements.

## II.    FRAUDULENT JOINDER

Fraudulent joinder is proven when "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). "Put another way, '[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged.'" *GEICO v. Saco*, Nos. 12–CV–5633 (NGG)(MDG), 15–CV–634 (NGG)(MDG), 2015 WL 4656512, at *2 (E.D.N.Y. Aug. 5, 2015) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)).   Courts disregard the citizenship of fraudulently joined parties when analyzing diversity jurisdiction. *See Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000).

Under New York law, the existence of a valid and enforceable contract is required for a breach of contract action, and an action for a declaration of rights under a contract. *See Lang v. Hanover*, 3 N.Y.3d 350, 353-54 (2004); CPLR 3001 (requiring an actual, "justiciable controversy"

---

[6] Acceptance joins in the Motion to Sever and it is incorporated by reference herein.

between the parties). A claim for unjust enrichment requires a showing that one party was enriched at the other party's expense, and that it would be inequitable to allow the enriched party to retain the benefit. *See Schoch v. Lake Champlain Ob-Gyn, P.C.*, 184 A.D.3d 338, 344 (N.Y. App. Div., 2020). FGNY can assert those claims against no Defendant except Acceptance, and no other Plaintiff can assert those claims against Acceptance.

## ARGUMENT

The Court should not permit Plaintiffs' artful pleading to defeat Acceptance's right of removal. Federal courts have original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441(a); 28 U.S.C. § 1446. Complete diversity is required between any properly joined plaintiffs and any properly joined defendants. FGNY and Acceptance are completely diverse[7] and the amount in controversy exceeds $75,000.[8] Courts disregard the citizenship of fraudulently misjoined or fraudulently joined parties for purposes of analyzing diversity jurisdiction.[9] Here, the doctrines of fraudulent misjoinder and fraudulent joinder both apply. Plaintiffs structured their complaint to frustrate Defendants' right of removal. The misjoined claims fail to satisfy any of the requirements of permissive joinder, as they arise out of 62 separate insurance policies. Further, no Plaintiff other than FGNY can recover against Acceptance, and FGNY cannot recover against any other

---

[7] FGNY is a citizen of Connecticut and New York because its members reside in those states. ECF No. 68 ¶ 16. Acceptance is a Nebraska corporation with its principal place of business in Raleigh, North Carolina. ECF No. 1 ¶ 5. Thus, Acceptance is a citizen of Nebraska and North Carolina.

[8] FGNY owns 14 Five Guys locations. *See* Am. Compl. ¶¶ 179, 187. Plaintiffs alleged that each FGNY location suffered "substantial" losses. *See id.* ¶ 183. The policy provides limits of $1,000,000 per occurrence. *See* ECF Nos. 44-45. Finally, Plaintiffs' Motion to Remand does not refute Acceptance's understanding that the amount in controversy exceeds $75,000. *Compare* ECF No. 1 ¶ 3, *with* Plaintiffs' Motion to Remand.

[9] Plaintiffs argue in a footnote that not all Defendants have consented to removal in violation of the rule of unanimity. *See* Plaintiffs' Motion to Remand at 7 n.6. This disregards the argument raised in every Defendant's removal filing: "Because the other defendants have not been properly joined, they need not join in or consent to the removal of this action." *See* ECF No. 1 ¶ 14 (citing 28 U.S.C. § 1446(b)(2)(A) and the preceding paragraphs describing Plaintiffs' fraudulent misjoinder).

Defendant. Plaintiffs should not be permitted to manipulate the rules of civil procedure to frustrate Acceptance's right of removal.

## I.      FRAUDULENT MISJOINDER APPLIES TO DEFEAT REMAND

The doctrine of fraudulent misjoinder applies to defeat remand in this lawsuit. Fraudulent misjoinder occurs when the joinder of any non-diverse plaintiff or defendant violates the rules of permissive joinder. The United States District Court for the Eastern District of New York ("EDNY") has applied the doctrine, recognizing the significant policy concerns it alleviates. Here, the joinder of 94 Plaintiffs against 41 Defendants arising out of 62 insurance policies was improper because the claims arise out of separate transactions and no common question of law or fact would arise. Accordingly, the claims are fraudulently misjoined.

### A.      The EDNY Has Applied the Doctrine

The EDNY recognizes the doctrine of fraudulent misjoinder. *See In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 JG VVP, 2013 WL 3729570, at *8 (E.D.N.Y. May 17, 2013) (accepting jurisdiction based on the doctrine of fraudulent misjoinder); *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 (BMC)(PK), 2016 WL 3541543, at *4 (E.D.N.Y. June 23, 2016) (concluding that an action would be removable if "a plaintiff's claim against a non-diverse party fails as a matter of law, or must be severed as a matter of state law, making the joinder of that claim with the claim against the diverse party improper"). This is consistent with the reasoning of other Second Circuit courts, *see, e.g., In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147–48 (S.D.N.Y. 2001) (applying doctrine of fraudulent misjoinder, severing the non-diverse action, and retaining jurisdiction over the diverse actions); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378-88 (S.D.N.Y. 2006) (applying doctrine of fraudulent misjoinder, but finding that the claims were properly joined); *Mancinone v. Allstate Ins. Co.*, No.

3:20-CV-00082 (KAD), 2020 WL 5709675, at *7 (D. Conn. Sept. 24, 2020) (applying doctrine of

fraudulent misjoinder, severing the non-diverse action, and retaining jurisdiction over the diverse

action), and courts in other Circuits. *See, e.g.*, *Brietner v. Merck & Co., Inc.*, 2019 WL 316026

(D.N.J. Jan. 24, 2019) (same).[10] Thus, the EDNY and other District Courts in the Second Circuit

have adopted the doctrine of fraudulent misjoinder.

Fraudulent misjoinder occurs when "a plaintiff has added claims to the complaint—either

claims by other non-diverse plaintiffs or claims against other non-diverse defendants—which,

although perhaps valid, are nevertheless not properly joined under the applicable permissive

joinder rules." *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 JG VVP, 2013

WL 3729570, at *4 (E.D.N.Y. May 17, 2013).  This Court has described the "typical situation" as

follows:

> The typical situation in which fraudulent misjoinder is argued
> involves a complaint for which diversity is lacking on its face. The
> defendant has nevertheless removed the case to federal court, and
> has asked the court to sever the claims involving the non-diverse
> parties and remand them to state court, while retaining jurisdiction
> over only the claims as to which diversity jurisdiction exists.

*Id.* It arises from the similar doctrine of fraudulent joinder. *See Wilson v. Republic Iron & Steel*

*Co.*, 257 U.S. 92, 97 (1921) (A defendant's right of removal based on diversity of citizenship

"cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with

---

[10] *See also, e.g.*, *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, No. 11-3045, 2012 WL 1118780
(D.N.J. April 3, 2012) (same); *Asher v. Minnesota Mining and Manufacturing Co.*, No. 6:04-cv-522-DCR, 2005 WL
1593941 (E.D. Ky. 2005); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) (agreeing with the Fifth and
Eleventh Circuits that the fraudulent misjoinder doctrine is a logical extension of the well-settled fraudulent joinder
doctrine, finding fraudulent misjoinder, severing the non-diverse actions, and denying remand of the diverse actions);
*In re Diet Drugs*, No. 1203, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999); *In re Benjamin Moore & Co.*, 318 F.3d
626, 630-631 (5th Cir. 2002) (favorably discussing *Tapscott* and the doctrine of fraudulent misjoinder, but finding that
the Court lacked jurisdiction to review the district court's decision regarding misjoinder); *Bunnell v. Oklahoma MH
Properties, LP*, No. CIV-12-372-R, 2012 WL 12863916 (W.D. Okla. May 11, 2012); *Hughes v. Sears, Roebuck &
Co.*, No. CIV.A. 2:09-CV-93, 2009 WL 2877424, at *7 (N.D.W. Va. Sept. 3, 2009); *Milliet v. Liberty Mut. Ins. Co.*,
No. CIV.A. 07-7443, 2008 WL 147821 (E.D. La. Jan. 11, 2008).

the controversy."). "The principle underlying traditional fraudulent joinder would seem to apply with equal force in cases of egregious misjoinder: '[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining . . . parties with no real connection with the controversy.'" *In re Fosamax Prod. Liab. Litig.*, No. 1:06-MD-1789 (JFK), 2008 WL 2940560, at *4 (S.D.N.Y. July 29, 2008) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)). Thus, both doctrines involve "a plaintiff['s] attempts to defeat removal by joining parties with no real connection to plaintiff's claims." *Id.* Here, FGNY attempts to defeat Acceptance's right of removal by joining 93 other Plaintiffs and 40 other Defendants that have no connection to the contract between FGNY and Acceptance.

### B.   The Doctrine Is Necessary to Prevent Gamesmanship

The doctrine of fraudulent misjoinder is necessary to prevent just the type of gamesmanship employed by Plaintiffs. In their Motion to Remand, Plaintiffs make several arguments to support their manipulation of the civil procedure rules to avoid the fraudulent misjoinder doctrine. However, in applying the doctrine in *Propecia*, the EDNY has dispelled each of Plaintiffs' arguments:

First, the Court found that application of the fraudulent misjoinder doctrine raises no federalism concerns. *See In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 JG VVP, 2013 WL 3729570, at *6 (E.D.N.Y. May 17, 2013). Plaintiffs' reliance on *A. Kraus & Son v. Benjamin Moore & Co.*, is misplaced. No. CV 05-5487, 2006 WL 1582193 (E.D.N.Y. June 7, 2006)). Seven years after *Kraus*, the EDNY decided *Propecia*. The EDNY applied the doctrine of fraudulent misjoinder, noting that it "does not serve to improperly extend federal jurisdiction, but rather promotes judicial efficiency and prevents manipulation of the court system by misjoinder of plaintiffs in state courts." *See Propecia*, 2013 WL 3729570, at *5-8. Further, the EDNY in

9

*Propecia* noted that, "[c]ontrary to the plaintiffs' argument, this court did not reject fraudulent misjoinder in *Kraus*, but declined to decide the issue because the claims before it were properly joined." *See id.* at *5 n.4; *see also Kraus*, 2006 WL 1582193, at *6 (finding that plaintiffs' joinder was unquestionably proper).

Second, application of the doctrine in this case is clear and consistent. Fraudulent misjoinder occurs when the joinder of any non-diverse plaintiff or defendant violates the rules of permissive joinder. *See Propecia*, 2013 WL 3729570, at *5-8; *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147–48 (S.D.N.Y. 2001). The EDNY has rejected any requirement that the misjoinder be "egregious." *See infra* Section I.D. Instead, this Court has held that a violation of the rules of permissive joinder is sufficient under the doctrine of fraudulent misjoinder.

Third, Plaintiffs argue that, as "masters of their complaint," they can intentionally block Plaintiffs' right of removal by misjoining claims. *See* Plaintiffs' Motion to Remand, at 11. The doctrine of fraudulent misjoinder originated in response to this very *gamesmanship*. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (rejecting plaintiffs' argument that "a misjoinder, no matter how egregious, is not fraudulent joinder"), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The EDNY applied the doctrine in part because it "prevents manipulation of the court system by misjoinder of plaintiffs in state courts." *See Propecia*, 2013 WL 3729570, at *6. Although Plaintiffs may be considered "masters of their complaint," they cannot intentionally manipulate the court system to prevent Acceptance's right of removal.

Fourth, Plaintiffs argue that Acceptance should have moved to sever in state court and then sought to remove after severance was granted. This is further evidence of the gamesmanship employed by Plaintiffs. If Defendants had been granted severance in state court prior to removal,

Plaintiffs still would have moved for remand, arguing that: (1) removal is precluded pursuant to the voluntary-involuntary rule; and (2) Defendants' removal was untimely. Under the voluntary-involuntary rule, "the involuntary dismissal of non-diverse parties does not make an action removable." *Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980). The Second Circuit in *Quinn* found that "[t]he purpose of this distinction is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal, producing renewed lack of complete diversity in the state court action." *See id.* (citations omitted); *see also Utica Mut. Ins. Co. v. Am. Re-Insurance Co.*, No. 6:14-CV-1558 MAD/TWD, 2015 WL 1897155, at *3 (N.D.N.Y. Apr. 27, 2015). Thus, if Defendants had sought and obtained severance in state court prior to removal, Plaintiffs would have argued that removal is still prevented by the voluntary-involuntary rule.[11] At least one court has remanded an action following involuntarily severance of the non-diverse party. *See Utica*, 2015 WL 1897155, at *4. In *Utica*, the state court had granted severance, in part, based on the reasoning that "severance will afford [the diverse defendant] the opportunity to remove the claim against it to federal court." *See id.* at *1. After severance of the non-diverse defendant, the diverse defendant removed the action to the United States District Court for the Northern District of New York. *See id.* The Court found that the voluntary-involuntary rule precluded removal. *See id.* at *4.

The Court in *Utica* recognized this injustice and considered whether the doctrine of fraudulent misjoinder could save the removal. Ultimately, the Court found that removal based on fraudulent misjoinder was untimely. *See id.* An action must be removed within 30 days after the defendant is served with the summons or receives a copy of the initial pleading. 28 U.S.C. §

---

[11] Defendants do not concede that the voluntary-involuntary rule would apply to prevent removal after severance in state court. However, Defendants acknowledge that at least one court has held otherwise. *See Utica*, 2015 WL 1897155, at *4.

1446(b). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* The *Utica* Court found that the defendant knew that the action was removable well before issuance of the severance order, as it had filed an answer asserting fraudulent misjoinder as an affirmative defense. *See Utica*, 2015 WL 1897155, at *5. As such, the Court found the removal to be untimely and remanded the case. *See id.* at *5-6. Accordingly, the *Utica* defendant had forfeited its right of removal by failing to remove based on the doctrine of fraudulent misjoinder.

As "masters of their complaint," Plaintiffs believe they have stitched together a lawsuit impervious to removal. This cannot be. As set forth below, Plaintiffs' claims were clearly misjoined. Accordingly, the doctrine of fraudulent misjoinder should apply to maintain Acceptance's right of removal.

**C.    Plaintiffs' Claims Were Misjoined**

Plaintiffs' claims were misjoined because they satisfy no element of permissive joinder. CPLR 1002(a) permits joinder of plaintiffs as follows: "Persons who assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences, may join in one action as plaintiffs if any common question of law or fact would arise." CPLR 1002(b) permits joinder of defendants as follows: "Persons against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if any common question of law or fact would arise." Joinder is improper if any element

is not satisfied. As set forth below and in Defendants' Motion to Sever, Plaintiffs cannot meet the permissive joinder requirements.

         1.     *Each Plaintiff's "Right to Relief," If Any, Arises Out of Its Distinct Policy*

Plaintiffs do not "assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences." CPLR 1002(a). Each Plaintiff asserts three causes of action against one of the Defendant insurance companies: (1) breach of the insurance policy issued by that Defendant to that Plaintiff; (2) a declaration of rights under that policy; and (3) unjust enrichment for that Defendant's retention of premiums paid by that Plaintiff in connection with that policy. *See* Am. Compl. p. 224, ¶¶ 599-984. Accordingly, each Plaintiff's right to relief, if any, arises out of the insurance policy that it entered into with only one of the Defendants. *See Aguoji v. Am. Sec. Ins. Co.*, No. 13-CV-5964, 2014 WL 116445, at *2 (E.D.N.Y. Jan. 10, 2014). Those transactions occurred at different times in different places between different insurance companies and different policyholders. Thus, they are not "the same transaction . . . or series of transactions." CPLR 1002. As such, Plaintiffs do not "assert any right to relief jointly, severally, or in the alternative arising out of the same transaction, occurrence, or series of transactions or occurrences." CPLR 1002(a).

The EDNY has found that insurance coverage claims must arise out of the same policy to be joined. *See Aguoji v. Am. Sec. Ins. Co.*, No. 13-CV-5964, 2014 WL 116445, at *2 (E.D.N.Y. Jan. 10, 2014); *Dolan v. Safeco Ins. Co. of Indiana*, 297 F.R.D. 210, 212 (E.D.N.Y. 2014) ("[T]he 'transaction' or 'occurrence' must relate to the contract purportedly breached by defendant, i.e., the insurance policy."). In *Aguoji*, eight separate plaintiffs sustained property damage caused by Superstorm Sandy. *See Aguoji*, 2014 WL 116445, at *1. They collectively sued one insurance company for breach of six distinct insurance policies and other claims. *See id.* The defendant

requested leave to file a motion to sever the parties or dismiss the action. *Id.* at *1 n.1. But given the glaring misjoinder, the EDNY found it unnecessary to have the parties brief the issue. *See id.* "In order for a plaintiff's right to relief to relate to, or arise out of, a transaction or occurrence for purposes of Rule 20(a),[12] the 'transaction' or 'occurrence' must relate to the contract purportedly breached by defendant, i.e., the insurance policy." *Id.* at *2. Applying that standard, the EDNY found that the claims were improperly joined because: (1) the eight plaintiffs separately purchased six distinct insurance policies from the defendant; (2) the policies were issued at different times; (3) each of the six policies relates to a separate and distinct property; (4) "[e]ach plaintiff separately performed his or her own obligations under his or her respective insurance policy, *e.g.*, paid the premiums and submitted claims thereunder"; and (5) "[e]ach plaintiff seeks to recover his or her actual damages as a result of defendant's purported breach of his or her respective insurance policy, *i.e.*, either defendant's outright denial of his or her claims or its failure to pay the entire amounts claimed by him or her." *Id.* The fact that plaintiffs' properties were damaged by the same storm is immaterial to the determination of whether the plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions or occurrences. *Id.* That is because "each plaintiff's right to relief under his or her respective insurance policy issued by defendant is not affected by the fact that the wind that allegedly damaged his or her property may have been occasioned by the Storm." *Id.* As such, the EDNY *sua sponte* found joinder of the claims to be improper, severed all claims other than the first named plaintiff's, and dismissed them "without prejudice to commencing separate actions for each insurance policy issued by defendant." *Id.* at *3.

---

[12] FRCP 20(a) is "nearly identical" to CPLR 1002. *See Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, No. 14 CIV. 03303 LGS, 2014 WL 7004033, at *3 (S.D.N.Y. Dec. 11, 2014); *see supra* note 5; *see also* Plaintiffs' Motion to Remand, at 13 n.12 (noting that CPLR 1002 is "'nearly identical' to its federal counterpart"). New York State Courts also find claims arising out of separate policies to be improperly joined. *See, e.g., Booth Med., P.C. v. Eagle Ins. Co.*, 4 Misc. 3d 1030(A), 798 N.Y.S.2d 343 (Dist. Ct. Nassau Cty. 2004); *Mount Sinai Hosp. v. Motor Vehicle Accident Indemnification Corp.*, 291 A.D.2d 536, 536 (2002).

The factors relied on by the *Aguoji* Court require a determination of misjoinder in this lawsuit. A summary of these factors are as follows: (1) the 94 plaintiffs separately purchased 62 distinct insurance policies from the 41 defendants; (2) the 62 policies were issued at different times; (3) each of the 62 policies relates to a separate and distinct property (or properties); (4) "[e]ach plaintiff separately performed [its] own obligations under [its] respective insurance policy, *e.g.*, paid the premiums and submitted claims thereunder"; and (5) "[e]ach plaintiff seeks to recover [its] actual damages as a result of defendant's purported breach of [its] respective insurance policy." *See id.* at *2. Further, here, Plaintiffs' losses were sustained to different businesses in different states by different governmental orders. *See infra* Section I.C.2. (discussing the overwhelming differences among the 62 misjoined claims). Moreover, the fact that the claims were caused by the same catastrophe is irrelevant to this analysis. *See Aguoji*, 2014 WL 116445, at *1.

Joinder is improper if any element of CPLR 1002 is not satisfied. CPLR 1002. Plaintiffs' "rights to relief," if any, arose out of separate transactions. As such, Plaintiffs' claims were misjoined because they failed to satisfy the first element. The Court need not consider whether the other elements have been satisfied. Nonetheless, Plaintiffs also fail to satisfy the second element.

## 2. *No Common Question of Law or Fact Would Arise*

Plaintiffs do not meet the second element of permissive joinder because no "common question of law or fact would arise." CPLR 1002. Each Plaintiff alleges causes of action against only the Defendant insurer that sold it an insurance policy. Coverage for those claims will be different under each unique insurance policy. Substantial differences in these 62 misjoined claims predominate over any common question:

*Different Businesses.*   The Plaintiffs are, in their words, a "broad and diverse group" of businesses located across multiple states. *See* Am. Compl. p. 1, ¶¶ 32-125, 179-598; *see also id.* ¶

2 (describing themselves as a "diverse cross section of New York's restaurant and hospitality industry"). The businesses include fine dining establishments, live music venues, fast food restaurants, nightclubs, pastry shops, wineries, and a theater. *See id.* ¶¶ 2, 32-125, 179-598.

*Different Losses.*  The businesses each sustained different losses. Some completely stopped operations, others remained open to provide take-out or delivery services, while others already provided primarily to-go service, which they were permitted to continue. *See id.* ¶¶ 6-7, 179-598.

*Different Policies.*  The 62 different insurance policies implicated in this action contain varying terms, conditions, exclusions, and limitations. *See generally* Am. Compl. Exhibits 1-65 (ECF Nos. 1-42 through 1-129). For example, Acceptance's policy excludes "loss or damage caused by or resulting from any virus." *See* ECF No. 1-44. Other policies contain similar exclusions with different wording. *See, e.g.*, ECF No. 1-5 (insurance policy issued by Defendant Zurich excluding loss or damage caused by "microorganisms"); ECF No. 1-19 (insurance policy issued by Defendant Lexington excluding loss from "contaminants or pollutants"). As such, resolution of one action would not resolve the other 61 actions. Moreover, Plaintiffs concede that the policies contain different insuring agreements. *See* Am. Compl. 13 n.3. As the United States Judicial Panel on Multidistrict Litigation recently noted, "While the policy language for business income and civil authority coverages may be very similar among the policies, seemingly minor differences in policy language could have significant impact on the scope of coverage." *See In re COVID-19 Bus. Interruption Protection Ins. Litig.*, No. MDL 2942, 2020 WL 4670700, at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 12, 2020). The JPML found consolidation inappropriate because "these cases involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states." *Id.* at *2. Further, "judicial economy and fairness dictate that plaintiffs' claims under each

16

distinct insurance policy issued by defendant be tried separately." *Aguoji v. Am. Sec. Ins. Co.*, No. 13-CV-5964 DLI VVP, 2014 WL 116445, at *2 (E.D.N.Y. Jan. 10, 2014). Accordingly, claims arising out of separate insurance policies do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." *See id.*; CPLR 1002.

<u>*Different Orders.*</u>   The claims involve different stay at home orders. As Plaintiffs' Amended Complaint makes clear, Plaintiffs claim losses sustained to locations in multiple different states, allegedly arising out of the issuance of different orders. *See* Am. Compl. ¶¶ 177, 32-125, 179-598. The separate issuance of different orders by different Mayors and Governors of different cities and states could not possibly constitute "the same transaction, occurrence, or series of transactions or occurrences." *See* CPLR 1002.

Accordingly, resolution of any one claim would have no bearing on the remaining 61 claims.

### D.   <u>Although Not Required, This Misjoinder Is Egregious</u>

Fraudulent misjoinder does not require a finding of egregiousness.  *See In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147–48 (S.D.N.Y. 2001); *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 JG VVP, 2013 WL 3729570, at *7 (E.D.N.Y. May 17, 2013); *Mancinone v. Allstate Ins. Co.*, No. 3:20-CV-00082 (KAD), 2020 WL 5709675, at *7 (D. Conn. Sept. 24, 2020). In *Rezulin*, the SDNY found that fraudulent misjoinder does not have to be egregious with respect to misjoined plaintiffs. *See Rezulin*, 168 F. Supp. 2d at 147-48. The Court reasoned, "Arguably a plaintiff's right to choose among defendants and claims—the principal reason for imposing a strict standard of fraudulent joinder to effect removal—is not compromised where claims of co-plaintiffs are severed or dismissed." *See id.* at 147 (finding that "the cost and efficiency benefits to joined plaintiffs . . . simply do not carry the same weight when balanced

against the defendant's right to removal"). Accordingly, the *Rezulin* Court found that where a misjoined claim "had the additional element of destroying diversity," no egregiousness is required. *See Propecia*, 2013 WL 3729570, at *7 (explaining the reasoning of *Rezulin* before adopting it). As such, the EDNY has determined that a finding of fraudulent misjoinder does not require egregiousness. Accordingly, to sustain a finding of fraudulent misjoinder, the defendant need only prove that the claims were misjoined pursuant to permissive joinder rules, and that the misjoinder destroyed diversity.

This comports with the analysis under the well-established fraudulent joinder doctrine. Courts find fraudulent joinder where "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). This inquiry "does not require a finding of 'fraud in the common law sense of that term' or an examination of 'the subjective intent behind the preparation or structure of the plaintiff's pleading.'" *Propecia*, 2013 WL 3729570, at *5.

Although not required, the misjoinder in this action is egregious. Many courts that have applied an "egregiousness" standard have found it satisfied where the claims lack a reasonable connection and would deprive the defendants of their right of removal. *See, e.g.*, *In re Diet Drugs*, No. 1203, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999). The *Diet Drugs* Court found the joinder of "unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims" to "go[] well beyond mere misjoinder." *See id.* (finding that permitting the joinder "would obstruct and delay the adjudication process"). Similarly, here, Plaintiffs are wholly unrelated. *See* ECF No. 67 (Plaintiffs' Rule 7.1 Corporate Disclosure Statement confirming that they are unrelated). Plaintiffs are also geographically diverse, as they are citizens of different states, and allege losses sustained to multiple different

locations. Finally, since Plaintiffs' claims arise out of different insurance policies, resolution of one Plaintiffs' claims will not resolve the other 61 claims. *See supra* Section I.C. Similarly, the Court in *Tapscott* found claims to be egregiously misjoined where claims against the resident defendant "have no real connection with the controversy involving" the other defendants. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Likewise, here, FGNY's claims have no real connection with the claims of FGNY's co-Plaintiffs. As explained *infra* Section II., FGNY has no possibility of recovering against any defendant other than Acceptance, and no Plaintiff other than FGNY has any possibility of recovering against Acceptance. Accordingly, even if a finding of "egregiousness" were required, Plaintiffs' claims are egregiously misjoined.

Finally, this misjoinder is egregious because it defies the clear case law prohibiting joinder in this context. Courts have already determined that pandemic-related coverage claims should not be litigated together. Federal courts have *sua sponte* severed these claims brought by different plaintiffs against their respective insurers. *See, e.g.*, *Chattanooga Prof'l Baseball v. Philadelphia Indem. Ins. Co.*, No. 20-cv-03032 (E.D. Pa. June 25, 2020) (*sua sponte* severing the COVID-19 business income claims of each plaintiff, where 15 plaintiffs in 11 states brought a single lawsuit against 5 insurers involving different insurance policies); *Ultimate Hearing Solutions v. Hartford Underwriters Ins. Co.*, No. 20-2401 (E.D. Pa. July 8, 2020) (*sua sponte* severing COVID-19 business income claims). Further, the United States Judicial Panel on Multidistrict Litigation ("JPML") has denied consolidation of pandemic-related coverage cases. *See, e.g.*, *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, No. MDL 2942, 2020 WL 4670700, at *2 (U.S. Jud. Pan. Mult. Lit. Aug. 12, 2020) (declining to consolidate pandemic-related coverage cases into a

nationwide MDL). The JPML found consolidation inappropriate because the claims shared "only a superficial commonality" and involved "different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states." *See id.* These differences, the Panel found, would "overwhelm" any common questions. *See id.* Finally, one group of plaintiffs in the District of New Jersey recently moved to sever their own claims, acknowledging that they "involve different policies and none of the defendants bear relation to each other." *See* Memo. Supp. Motion to Sever Claims Against Hartford Defendants and Remand Claims Against Selective Defendants (ECF No. 14-1), *Z Bus. Prototypes v. Hartford Underwriters Ins. Co.*, No. 1:20-cv-10075 (D.N.J. Aug. 27, 2020).

Plaintiffs cite no example of any court permitting the joinder of all claims related to COVID-19. Plaintiffs rely on two inapposite cases. First, *Hempstead General Hospital v. Liberty Mutual Insurance Co.* involved multiple "no fault" claims asserted against only one insurer defendant. *See* 521 N.Y.S.2d 469, 469–70 (1987). Second, *Kips Bay Endoscopy Center v. Travelers Indemnity Co.* was brought by a group of four "associated physicians" against Travelers and two of its wholly owned subsidiaries. *See* No. 1:14-cv-7153 ER, 2015 WL 4508739, at *1 (S.D.N.Y. July 24, 2015). The Travelers defendants argued "that Plaintiffs' claims against them [were] improperly joined with Plaintiffs' negligence claim against ConEd under C.P.L.R. § 1002(b)." *Id.* at *6. Joinder of an insurance company and the alleged tortfeasor has no import here. As such, Plaintiffs provided no support for their egregious misjoinder.

Plaintiffs misjoined the claims of 94 different businesses in different states that separately contracted with 41 different insurance companies to procure 62 different policies. While there is no "egregiousness" requirement, this misjoinder is egregious. As such, removal is proper pursuant

20

to the doctrine of fraudulent misjoinder. Based on the foregoing, the Court should deny Plaintiffs' Motion to Remand, sever the action between FGNY and Acceptance, and maintain Acceptance's right of removal based on diversity jurisdiction. To the extent that other Defendants join in this Opposition, the Court should similarly sever those actions and maintain those Defendants' right of removal.

## II.   FRAUDULENT JOINDER APPLIES TO DEFEAT REMAND

The doctrine of fraudulent joinder also applies to defeat remand in this lawsuit. In order to show that a party has been fraudulently joined to destroy diversity, the removing party must show "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998). "Put another way, '[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged.'" *GEICO v. Saco*, Nos. 12–CV–5633 (NGG)(MDG), 15–CV– 634 (NGG)(MDG), 2015 WL 4656512, at *2 (E.D.N.Y. Aug. 5, 2015) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)). Courts disregard the citizenship of fraudulently joined parties when analyzing diversity jurisdiction. *See Intershoe, Inc. v. Filanto S.P.A.*, 97 F. Supp. 2d 471, 474 (S.D.N.Y. 2000).

Here, there is no possibility that FGNY can recover from any Defendant other than Acceptance. FGNY asserts no claims against, and seeks no relief from, any other Defendant. *See* Am. Compl. Accordingly, all other Defendants are fraudulently joined. *See Whitaker*, 261 F.3d at 207 (finding fraudulent joinder where "the amended complaint does not state a cause of action against [the non-diverse defendant] or seek any relief against this entity under state law"). Moreover, FGNY cannot assert any claims against any other Defendant. All three of FGNY's

claims arise out of the policy issued to it by Acceptance. FGNY asserts three causes of action against Acceptance: (1) breach of the insurance policy issued by Acceptance; (2) a declaration regarding the rights under that policy; and (3) unjust enrichment related to premiums paid pursuant to that policy. *See* Am. Compl. p. 224, ¶¶ 599-984. FGNY does not allege—nor does it have—any contract with any other Defendant. *See id.* ¶¶ 179-189, 749-754. Accordingly, there is no possibility that FGNY could recover from any Defendant other than Acceptance. Therefore, all other Defendants are fraudulently joined to the action between FGNY and Acceptance. Their citizenships should be disregarded for purposes of diversity jurisdiction and they should be dismissed from the action between FGNY and Acceptance.

Similarly, no Plaintiff other than FGNY can recover from Acceptance. No other Plaintiff asserts any claims against Acceptance or seeks any relief from Acceptance. *See id.* p. 224, ¶¶ 599-984. Accordingly, all other Plaintiffs are fraudulently joined. *See Whitaker*, 261 F.3d at 207. Further, all three claims asserted by the other Plaintiffs arise out of separate insurance policies issued by other Defendants. *See* Am. Compl. p. 224, ¶¶ 599-984. No Plaintiff other than FGNY has alleged the existence of any contract with Acceptance or that Acceptance retained something of value from them. *See id.* ¶¶ 179-189, 749-754 (FGNY alleging that it is insured by Acceptance); *see also id.* ¶¶ 179-598 (other Plaintiffs alleging that they are insured by Defendants other than Acceptance). Accordingly, there is no possibility that any other Plaintiff could recover from Acceptance. Therefore, all other Plaintiffs are fraudulently joined to the action between FGNY and Acceptance. Their citizenships should be disregarded for purposes of diversity jurisdiction and they should be dismissed from the action between FGNY and Acceptance.

## **CONCLUSION**

The doctrines of fraudulent joinder and fraudulent misjoinder exist in jurisprudence specifically to prevent the *gamesmanship* undertaken by Plaintiffs. Plaintiffs stitched together the unrelated claims of different businesses for the specific purpose of destroying Defendants' right of removal. Plaintiffs are different businesses in different states that separately contracted with 41 different insurance companies at different times. Each procured one of 62 different insurance policies with different terms covering different locations. Each business has claims against only the specific insurance company that issued an insurance policy covering that business. As "masters of their complaint," Plaintiffs believe they have stitched together a lawsuit impervious to removal. Plaintiffs argue that they can defeat removal by joining together with enough other people who want to litigate about the same general subject matter. However, permissive joinder requires that the rights to relief arise out of the same transaction or series of transactions, and a common question of law or fact. Here, each Plaintiff's right to relief, if any, arises out of its unique insurance policy that it entered into with only one of the 41 Defendants. As such, these claims were fraudulently misjoined. The Court should not permit Plaintiffs to manipulate the rules of civil procedure to frustrate Defendants' right of removal.

Based on the foregoing, the Court should deny Plaintiffs' Motion to Remand, sever the action between FGNY and Acceptance, and maintain Acceptance's right of removal based on diversity jurisdiction. To the extent that other Defendants join in this Opposition, the Court should similarly sever those actions and maintain those Defendants' rights of removal.

Dated:  October 20, 2020
       New York, New York

                                   Respectfully Submitted,

                                   **FORAN GLENNON PALANDECH**
                                   **PONZI & RUDLOFF PC**

By:

                                   */s/ Charles J. Rocco*
                                   Charles J. Rocco, Esq.
                                   Ashley C. Vicere, Esq.
                                   *Attorneys for Defendant Acceptance*
                                   *Indemnity Insurance Company*
                                   40 Wall Street, 54th Floor
                                   New York, New York 10005
                                   Tel:    (212) 257-7100
                                   Fax:   (212) 257-7199
                                   crocco@fgppr.com
                                   avicere@fgppr.com